GRAND RIVER DAM AUTHORITY v. MISENHIMER et al.

No. 31400.   June 12, 1945.

Rehearing Denied Sept. 18, 1945.

*161 P. 2d 757.*

Edward P. Marshall, R. L. Davidson, and Jesse L. Ballard, all of Tulsa, for plaintiff in error.

Frank Nesbitt and Nelle Nesbitt, both of Miami, for defendants in error.

ARNOLD, J. The controversy in this case arises out of the closing of U. S. Highway No. 60 at two points, one a little less than a quarter of a mile to the west of plaintiffs' property and the other about a quarter of a mile to the east and a little south of said property, by inundation caused by the closing of the dam belonging to defendant. The said highway runs along the south side of plaintiffs' property. The principal question for determination is whether in a case of this kind the owner of property abutting on the highway has a cause of action for damages against the Grand River Dam Authority when another roadway has been opened by the county which ordinarily affords a means of ingress and egress.

There is no controversy as to the facts. The plaintiffs owned and have occupied as their homestead for more than 11 years prior to the filing of this action a ten-acre tract located on what was formerly U. S. Highway No. 60, about a mile north and west of Wyandotte, Okla. The highway is of asphalt construction and runs along the south side of said land. It was and is now used as the means of ingress and egress east and west. Before the highway was closed on account of inundation to the east and west of plaintiffs' land and home, it was less than a mile east and south by way of said highway from

their home to the town of Wyandotte. The plaintiffs buy groceries, get their mail, and send their children to school in that town. To the west of said highway is their only usable road to Fairland, Vinita, and other towns. After closing of the dam the water backed over the highway at a point about a quarter of a mile to the east and a little south of plaintiff's property, completely cutting off the direct road to the town of Wyandotte. It became necessary for them to turn off the highway at the first section line east and go north one mile, then east one mile and then south a mile and a half to get to said town. This is an ordinary section line, dirt road and is practically impassable in wet weather. It is also indicated in the record that when the lake is completely full even this road would be partially inundated, making it impossible for the plaintiffs to get to that town by either road. Running along the east side of said property is a private lane leading from the highway to the Cotter home. After the highway was inundated at the above specific points this lane was opened by the county to the new highway No. 60. It appears that after the highway was inundated a new bridge was built a short distance north of the two old bridges and the highway rerouted. Up to the time of the trial the new highway was open only to a point about even with where the line would come into it. The said highway was detoured from that point south along said lane to the old highway, thence east one mile, thence north off the old highway one mile and thence east to the railway overpass on the old highway. This is a dirt road and by reason of a hill it also is practically impassable during wet weather. Even after the completion of the new highway the access of the plaintiffs thereto will continue to be over these dirt roads. Based upon these facts the plaintiffs brought this action for damages in the sum of $3,000, alleging, in substance, that their right of ingress and egress from their property upon and over U. S. Highway No. 60 gave them a special right in said highway of which they could not be deprived without just compensation, and further, that their ingress and egress over U. S. Highway No. 60 from the east and west has been wholly destroyed and plaintiffs' property has been placed in a cul-de-sac.

The defendant demurred to the petition on the grounds (1) the court was without jurisdiction over the subject matter, (2) the plaintiffs have no legal capacity to sue, and (3) it does not state facts sufficient to constitute a cause of action against the defendant. The demurrers having been overruled, defendant answered by way of general denial.

The trial resulted in a verdict in favor of the plaintiffs in the amount of $800.

It is contended by the Authority that it as a governmental agency would enjoy sovereign immunity except for the consent given by the state for it to be sued for damages to private property in the performance of its duties; that therefore no action was maintainable at common law for the damages occurring and complained of; that where a cause of action does not exist at common law but is a creature of statute the remedy or procedure provided is exclusive and must be substantially complied with; and that the remedy or procedure set forth in section 61, ch. 139, S.L. 1923-24, the Conservancy Act (82 O.S. 1941 § 664) is the exclusive procedure provided for suits against the Authority and there was no attempt at compliance therewith; that the procedure outlined by section 6, ch. 70, S.L. 1935 (82 O.S. 1941 § 486) was not intended to apply to the Authority and is unconstitutional and void; and that the plaintiffs neither alleged, proved, nor had any property rights in said highway that were impaired or destroyed different from that enjoyed by the general public.

82 O.S. 1941 § 862 (a part of the Grand River Dam Authority Act) provides in part:

"(j) To sue and be sued in its corporate name; . . .

"(p) To do any and all other acts or things necessary or convenient to the exercise of the powers, rights, privileges or functions conferred upon it by this Act or any other Act or law. Provided said District shall be liable for all damage caused by said District, its agents, servants and employees in creating, constructing, maintaining or operating said District to any corporation, partnership, person or individual whose property, either real or personal, within or without said District, has been damaged and said damages may be determined by appropriate action in the same manner as provided by law under the conservancy act of the State of Oklahoma.

"Provided, however, that in the course of exercising its powers as herein enumerated the said District shall at all times consider the rights and needs of the people living within and upon the land lying within the water shed of the Grand River and its tributaries above the District; Provided, however, that nothing herein shall prevent the district from selling for irrigation purposes within the boundaries of the District any water impounded by it under authority of law, provided that nothing herein contained shall authorize the State to engage in agriculture except for Educational and Scientific purposes and for the support of its penal, charitable and educational institutions."

The general purposes to be accomplished and plan of operation under the original Conservancy Act are well stated by the Grand River Dam Authority:

"By Chapter 139, Laws 1923-1924, being Chapter 5, Tit. 82, O.S. 1941, as amended, defined by Sec. 1, thereof, as the 'Conservancy Act of Oklahoma,' comprehensive provisions are made for the creation of conservancy districts under the jurisdiction of the District Courts of the state, having power to assess benefits, appraise and pay damages, issue bonds, levy assessments and police the districts' works; and authorized to exercise the power of eminent domain to accomplish certain objects, among others, the prevention of floods, reclaiming lands, regulating the flow of streams, etc., as set forth in Section 3 of the Act. (Tit. 82, Sec. 541, O.S. 1941.)

By Section 61 of the Act (Tit. 82, Sec. 664, O.S. 1941) two methods of procedure are provided for the determination of damages sustained by any party injuriously affected by any act performed by any official, or by the district, in the execution, maintenance or operation of the official plan, dependent upon whether the injured party is within or without the district."

82 O.S. 1941 § 664 (§ 61 of the Conservancy Act of 1923-24) provides:

"In case any person or public corporation, within any district organized under this Act shall consider itself injuriously affected in any manner whatsoever by any act performed by any official or of such district or by the execution, maintenance or operation of the official plan, in case no other method of relief is offered under this Act, the remedy shall be as follows:

"The person or public corporation considering itself to be injuriously affected shall petition the court before which said district was organized for an appraisal of damages sufficient to compensate for such injuries. The court shall thereupon direct the board of appraisers of the district to appraise said damages and injuries, and to make a report to the court on or before the time named in the order of the court. Upon the filing of said report of said board of appraisers the court shall cause notice to be given to the petitioner, and to the directors of the district, of a hearing on said report. At the time of such hearing the court shall consider said report of said appraisers and may ratify said report or amend it, as the court may deem equitable, or may return it to the said board of appraisers and require them to prepare a new report. Upon the filing of an order of the Court approving said report of said appraisers, with such modifications as it may have made, said order shall constitute a final adjudication of the matter unless it shall be appealed from within twenty (20) days. A jury trial, after said order has been made by the court, shall be allowed, on demand, to the petitioner, the board of directors or any person or corporation who has been assessed for the cost of the district as provided in the general condemnation statute. No damages shall be recoverable except as provided herein.

"In case any person or private or public corporation without any district organized under this Act, shall consider itself or himself injuriously affected in any manner whatsoever by any act performed by any official or agent of said district, or by the execution, maintenance or operation of the official plan, it shall have the right to sue the said district for the damage caused. In all suits in any court for damages, condemnation or other proceedings, whether brought for or against such conservancy district, the same shall be brought in the name of the conservancy district as fixed by the order of the court and shall be under the direction of said board of directors, and in all suits against the said conservancy district, service of summons shall be issued and served on the chairman of the board of directors, which service shall be sufficient to bind the district."

By section 61, supra, of the Conservancy Act two remedies are provided for the determination of damages to all property.

One who resides in the district must make application for an appraisal of his damage to the district court and an order is made directing the appraisers to appraise and assess the damage. The report thereof is heard by the court after notice to the board of directors. The order approving or modifying the report is a final adjudication unless appealed from within 20 days. A jury trial is accorded to certain designated interested parties upon demand.

One who resides out of the district may sue the district.

The jurisdiction, venue, parties, mode of service or notice are practically identical in each instance. As indicated, the purpose of the suit or proceeding is the same.

Section 2 of the Grand River Dam Authority Act provides that the Authority may sue or be sued in its corporate name and the district shall be liable for all property damages caused by the Authority in its operation of the district created by the act. It is provided that anyone may sue for such damage done to private property inside or outside the district and "said damage may be determined by appropriate action in the same manner as provided by law under the Conservancy Act of the State of Oklahoma."

Under the original Conservancy Act it was the intention of the Legislature that all persons who suffer property damage by reason of the conservation practices of the district should receive adequate compensation therefor. In this respect there was no distinction made nor intended as between residents or nonresidents of the district. But the Legislature, for some unknown and unexplained reason, saw fit to provide one remedy for the residents and another for the nonresidents of the district. The remedy provided and applicable is exclusive to the class under the act. No one takes the position that such classification is unjust, arbitrary, capricious and unreasonable, but the fact should be given proper consideration in determining what is an "appropriate action" referred to in section 2 of the Authority Act. It must be conceded that the Legislature intended that all should have adequate, fair, and equal opportunity to prosecute their claims for damage to their property by the conservancy districts created under the original Conservancy Act as well as the conservancy district created by the Authority Act. Any other view would be to charge the Legislature with attempting to unjustly discriminate between the property rights of citizens of the state.

Such a statute should be liberally construed. It being the intention of the Legislature to provide adequate remedy for the recovery of just compensation for damage to private property by the Authority to all alike, and without discrimination, we think an "appropriate action" for the prosecution of a claim for such damage by anyone is either remedy prescribed by the Conservancy Act. Whichever remedy is followed in the prosecution of such claims against the Authority it is required that the remedy be prosecuted in the manner

prescribed by section 61, supra, of the Conservancy Act insofar as practically possible.

The interpretation given section 2 of the Authority Act is reasonable under all the circumstances and the peculiar wording thereof will obviate technicalities and discrimination without prejudice to the Authority. There is no contention that the notice provided in each instance does not satisfy due process.

It is admitted that section 6, ch. 70, S.L. 1935, if applicable, is not in conflict with section 61 of the Conservancy Act, and would, therefore, if constitutional and applicable, afford an additional remedy. This being admitted, it is not necessary to pass upon the other questions raised by the parties on this proposition.

As to the merits of the case defendant contends that plaintiffs failed to prove that they had acquired, owned, or held any special right, property right, easement of passage, or any other right not common to the public, to that part of the highway not extending along the width of their property; that the changing of the location in the rerouting of U. S. Highway No. 60 did not constitute a "taking" or "damaging" of private property for public use within the provisions of the Oklahoma Constitution; that the proof adduced only tended to show injuries of the same character suffered by the general public; and that the plaintiffs were not entitled to recover damages because the evidence disclosed that plaintiffs do not own nor hold an implied roadway easement or other proprietary interest in and to that part of old highway No. 60 not extending along the width of their property.

The defendant takes the position that since the old highway immediately in front of said property is unchanged the plaintiffs' ingress and egress remains unaffected; that they must show that they had acquired, owned, or held special rights in the highway before a recovery of damages could be had. This position is predicated upon the rule that where a road or street is closed at a point not in front of the particular tract of land, and without interfering with the ingress and egress immediately in front thereof, the owner cannot recover damages by reason thereof though access to it is rendered more inconvenient and by a more circuitous road because such an injury is one common to all the public. The cases supporting that rule and relied upon by the defendant are: Newton v. N.Y., N.H. & H.R. Co., 72 Conn. 420, 44 Atl. 813; Lord v. Atkins, 138 N.Y. 184, 33 N.E. 1035; Holloway v. Southmayd, 139 N.Y. 390, 34 N.E. 1047; Weeks v. N.Y.W. & B. Ry. Co., 207 N.Y. 190, 100 N.E. 719; Meyers v. City of Richmond et al., 172 U.S. 82, 19 S. Ct. 106, 43 L. Ed. 374.

An owner must show that some right or interest which he enjoys in connection with the property, which is not shared with or enjoyed by the public, is affected to entitle him to damages. The test is, has he suffered a special injury different in kind from that suffered by the public in general? The owner of property has a special interest in the roadway or street upon which his property abuts different from the general public. He has the right to adequate access to his land on the highway from either direction, and whenever that right is cut off or materially impaired by an obstruction in the highway he suffers an injury different in kind, not merely in degree, from that suffered by the public in general. If the highway upon which his property abuts is so closed that said property is placed in a pocket or, cul-de-sac, he suffers a special injury and may recover damages even though he has access thereto by a more inconvenient circuitous route. We think this expresses the better view as well as the rule to which we are committed in this jurisdiction.

See Atchison, T. & S. F. Ry. Co. v. Terminal Oil Mill Co., 180 Okla. 496, 71 P. 2d 617; Oil Fields & S.F. Ry. Co. v. Treese Cotton Co., 78 Okla. 25, 187 P. 201; Coy v. City of Tulsa, 2 Fed. Supp. 411; Denver Union Terminal Ry. Co. v.

Glodt et al., 67 Colo. 115, 186 P. 904; Park City Yacht Club v. City of Bridgeport, 85 Conn. 366, 82 Atl. 1035, 39 L.R.A. (N.S.) 478.

The plaintiffs have suffered a special injury, differing in kind from that suffered by the general public, by the closing of the asphalt highway on two sides of their property leaving as the only means of access two dirt roads both of which are not only more circuitous and inconvenient routes but at times practically impassable; such injury constitutes taking or damaging private property for public use within the meaning of section 24, art. 2, of our Constitution, and the damages sustained thereby are recoverable in an appropriate action such as this one.

Affirmed.

GIBSON, C.J., HURST, V.C.J., and OSBORN, BAYLESS, CORN, and DAVISON, JJ., concur. RILEY and WELCH, JJ., dissent.