**OKLAHOMA TURNPIKE AUTHORITY and Hunter Construction Company, a Corporation, Plaintiffs in Error,**

**v.**

**Guy F. CHANDLER and Hazel Chandler, Husband and Wife, Defendants in Error.**

**No. 37081.**

Supreme Court of Oklahoma.

March 5, 1957.

Rehearing Denied Oct. 8, 1957.

Looney, Watts, Looney, Welch, Hamill & Nichols, Anna B. Otter, Oklahoma City, for plaintiffs in error.

P. D. Erwin, Chandler, for defendants in error.

CORN, Vice Chief Justice.

This appeal, for the second time, presents for consideration plaintiffs' claim for damages alleged to have resulted from defendants' construction of the Turner Turnpike. The factual matters are delineated in Chandler v. Oklahoma Turnpike Authority, Okl., 271 P.2d 374. However, the following recitation will aid in consideration of the questions presented herein.

For many years plaintiffs owned and occupied a farm one mile east of Wellston, Oklahoma, their home and improvements being located on the southeast 40 acres. At all times prior to construction of the Turnpike a graded road extended from Wellston along the South boundary of their farm to the southeast corner, where the road turned south one-half mile to intersect U. S. Highway 66. The section lines to the east and north of their southeast corner never had been opened. The road south to the highway served as a mail and school bus route and provided a means of ingress and egress south to the highway and east to Chandler, the county seat. Construction of the Turnpike necessitated closing this road approximately one-fourth mile south of plaintiffs' farm, but a well graded and drained access road was opened up a mile west of their southeast corner. However, to travel east plaintiffs were required to travel an additional mile each way to reach the highway.

Based upon the foregoing facts plaintiffs alleged that the permanent closing of this road caused isolation of their farm and a great depreciation in value, and that by reason thereof they were entitled to direct and consequential damages. The Hunter Construction Company, a corporation, was joined as party defendant by reason of having been a contractor engaged in construction of the Turnpike in the area involved.

By appropraite pleadings defendants denied liability, upon the theory that plaintiffs had not sustained injury or damage special or different in kind from the damage suffered by the public generally from closing of this road, particularly since plaintiffs, and others in the community, had been provided with a suitable access road to the highway. Both by demurrer to the petition, and by answer defendants denied plaintiffs right to recover damages for the reason that they had not suffered damages which were unique or peculiar to them alone, as distinguished from damages affecting the community or general public.

The evidence in plaintiffs' behalf was directed toward showing the isolation of their property by closing of this road; that it was inconvenient to use the access road built by defendant, and that in bad weather the road leading west toward Wellston and the access road was inadequate; and that closing of the county road caused considerable depreciation in the valuation of their property.

Plaintiff testified the road closed by defendant formerly provided a means of access to the highway from his southeast corner in all kinds of weather because of the sandy soil and nature of the terrain; the road west toward Wellston often became impassable during winter snows because of drifts blocking the road in places, and dates of such occurrences were mentioned; when there were heavy rains the road going west would become flooded and cars traveling the road would be stalled. The matters, conditions and events testified to by plaintiff were corroborated by testimony of witnesses who lived in the vicinity and who had actual experience and knowledge concerning the nature and condition of these roads.

On cross-examination plaintiff admitted the value of his improvements were unaffected by closing of the road; before the southbound road was closed he had used the road going west, and still used this road in going to Wellston to trade; the access road built by defendant was a good graveled road, properly graded and drained, but to use such road he was required to travel further to reach the highway and go east to Chandler; his neighbors to the east, and adjacent to the southwest corner of his property had to use the same road to Wellston.

Relative to the damages suffered, plaintiffs fixed the value of his property at $25,000 before the road was closed, and at $13,000 thereafter. Five witnesses who were familiar with plaintiffs' farm, and the market value of land generally in the vicinity, testified as to the value of this farm before and after the road was closed. One witness fixed the value at $30,000 when the road was open, but only $20,000 after it was closed. Another set the value at $24,000 prior to the closing, but only $15,000 thereafter. The testimony of the three other qualified witnesses, relative to the original value as compared to the depreciated value, was within the above mentioned limits.

Defendants demurred separately to the evidence upon plaintiffs announcement of rest. The trial court sustained the corporate defendant's demurrer and ordered such defendant dismissed from the case, but overruled the demurrer interposed by defendant Turnpike.

Opposed to the above evidence defendant introduced the testimony of a photographer (McMann) employed by the Turnpike Authority. Over plaintiffs' objections the trial court permitted the introduction in evidence of several photographs taken prior to closing of the road. These photographs had been taken about a year prior to such closing, at a time when the road was quite muddy and while snow still remained on the banks along Highway 66. However, the witness testified the weather was clear when these photographs were made. The photographs depicted a rather muddy country road. The witness also stated that, in making the pictures he had turned north from the highway onto the road, and his car became mired in the mud making it necessary to back out and return to Wellston to have chains installed, since without them he would have been unable to drive over the road.

Four witnesses were qualified to testify in defendant's behalf concerning the value of plaintiffs' land and the extent of damage. One witness resided in another town in the county and had never lived in Wellston or dealt in farm land in that vicinity, although he had dealt in farm land in the Deep Fork area and had viewed plaintiffs' farm the day before the trial. Another witness, a banker, lived 20 miles from Wellston. He owned a farm, and had visited plaintiffs' farm for the purpose of qualifying as a witness. A third witness lived in Stroud and had

not dealt in real estate in the vicinity of Wellston, but had viewed plaintiffs' property. The fourth witness was farm appraiser for a bank in another town, who had appraised other farms in Lincoln county and around Wellston, but was not familiar with any farms which had been sold in the vicinity. The first witness fixed the value of plaintiffs' farm at $13,000 before the road was closed and at $12,000 thereafter; the second valued the property at $10,000 before and $9,500 afterward; the third appraised plaintiffs' land at $60 per acre and $50 per acre after the road was closed; the fourth set the value at $13,000 before and $12,000 afterward.

At the close of the evidence defendant's motion for a directed verdict was overruled, and upon defendant's request, the jury was taken to view the premises and then returned and received the trial court's instructions. The jury thereafter returned a verdict in plaintiffs' favor, against both defendants, in the amount of $6,000, with interest from the date (October 3, 1952) the road was closed. The judgment appealed from was rendered against the defendant, Oklahoma Turnpike Authority, upon the verdict of the jury.

Three propositions are argued as grounds for reversal of this judgment, two of which are based upon the evidence presented to the jury. The first of these, which defendant urges at length, is stated as follows:

"Plaintiffs' injuries in the closing of the county road are not special or unique to them, or different in kind from those suffered by the community in general, entitling them to recover in a common law action for damages. Therefore, defendant's demurrer to the evidence and its motion for a directed verdict should have been sustained."

The argument supporting this proposition really encompasses two separate, and assertedly fatal errors. The first portion of the argument is that plaintiffs' claim of special damages, resulting from closing of the road, is based upon what is defined and recognized by the law as an "abutter's easement", or an easement of access. See 18 Am.Jur., Eminent Domain, Sec. 181 et seq. An abutting property owner has a property right in a street or road adjacent to his property which amounts to a private right, as distinguished from a right held in common with the general public. This principle was recognized in Scrutchfield v. Choctaw, O. & W. Ry. Co., 18 Okl. 308, 88 P. 1048, 9 L.R.A.,N.S., 496. And, in accord with the general rule, complete destruction of an abutting owner's means of access to the public highway causes unique and special damages for which the law requires him to be reimbursed. See Grand River Dam Authority v. Misenhimer, 195 Okl. 682, 161 P.2d 757. But, defendant urges that in fixing compensation in such cases, courts should consider both the economic factors as related to public welfare, and relative interests of the public and the individual, and resolve the issue by weighing the extent of the owner's damage against the desirability and necessity of the improvement and the danger that granting compensation in damages will tend to retard or prevent such improvements.

This theory and reasoning is supported by citation of decisions from other jurisdictions, as well as the holding in Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322, 28 A.L.R. 1321. Defendant then says that our holding in Lindley v. Oklahoma Turnpike Authority, Okl., 262 P.2d 159, was based upon consideration of special economic factors and the public welfare when this court determined that, since the Turnpike did not touch plaintiffs' land, he suffered no special or unique damages which entitled him to compensation. Upon this argument defendant concludes that the Lindley case, supra, is dispositive of the present case.

We are of the opinion the conclusion reached is unsound. Extended analysis and comparison of the cited cases, and the reasoning advanced therein, is unnecessary in disposing of this issue. The factual matters in the Lindley case, supra, reflect a

very different situation from that herein presented. It is interesting to note, however, that the legal principles relied upon, and quoted in part, in the Lindley case were announced in Atchison, T. & S. F. Ry. Co. v. Terminal Oil Mill Co., 180 Okl. 496, 71 P.2d 617, and in Chicago, R. I. & Pac. Ry. Co. v. Prigmore, 180 Okl. 124, 68 P.2d 90. In the former case we recognized explicitly that: (1) a property owner had the right to adequate access to his property from either end of a street, and destruction of such right results in an injury not merely in degree, but different in kind from that suffered by the general public; (2) where there was evidence the landowner suffered more than mere inconvenience, it was for the jury to decide whether the right of ingress and egress had been impaired, even though the means of access had not been destroyed entirely. Upon this reasoning a jury verdict in favor of the abutting owner was affirmed. The same result was reached in the Prigmore case, supra.

We agree with plaintiffs' argument that the present appeal is controlled by our decision in Grand River Dam Authority v. Misenhimer, supra [195 Okl. 682, 161 P.2d 761]. Although defendant criticizes the principles enunciated therein as constituting an unfortunately broad statement of policy, particularly in view of the fact that the question of ingress and egress is a creation of judicial expression, we are of the opinion the following statement' in the Misenhimer case destroys the force of defendant's argument.

"An owner must show that some right or interest which he enjoys in connection with the property, which is not shared with or enjoyed by the public, is affected to entitle him to damages. The test is, has he suffered a special injury different in kind from that suffered by the public in general? The owner of property has a special interest in the roadway or street upon which his property abuts different from the general public. He has the right to adequate access to his land on the highway from either direction and whenever that right is cut off or materially impaired by an obstruction in the highway he suffers an injury different in kind, not merely in degree, from that suffered by the public in general. If the highway upon which his property abuts is so closed that said property is placed in a pocket or cul-de-sac, he suffers a special injury and may recover damages even though he has access thereto by a more inconvenient circuitous route. We think this expressed the better view as well as the rule to which we are committed in this jurisdiction."

In view of our consistent adherence to the rule we are not constrained to re-evaluate such pronouncement upon the basis, suggested by defendant, that compensation for damages for diminution in value must be considered by weighing relative interests of the public and the individual, to the end that government will not be unduly burdened in the exercise of what may be determined as most compatible for the public welfare.

Defendant also urges, as part of the first proposition, that it was prejudiced by the court's refusal to instruct the jury that any judgment for plaintiffs had to be based upon a determination that any damage suffered was special and peculiar to plaintiffs, and different from that suffered by the general public, and thereby precluded the jury from considering whether plaintiffs still had a convenient means of egress and ingress identical with that used by the community in general.

The jury was instructed that if the evidence showed construction of the Turnpike placed plaintiffs' property on a dead end road, materially impaired their right to use the road as it formerly existed and thereby caused them damage, their verdict should be for plaintiffs. Such instruction conformed to the rule announced in the Misenhimer and Terminal Oil Mill cases, supra. Moreover, the jury was instructed that it might consider whether plaintiffs had been provided with a better or worse outlet than they had before the road was closed.

■ Defendant also contends the amount awarded plaintiffs was excessive, unwarranted by the evidence, and obviously resulted from bias and prejudice. The argument is that since there was such a wide variance between the decrease in value shown by plaintiffs' evidence, elicited from friends and neighbors, and that reflected by defendant's evidence, given by impartial observers, the verdict rendered obviously did not result from true consideration of the elements involved in determination of the real value of the property under the circumstances. It is elementary that the credibility of the witnesses and the weight to be given their testimony are matters exclusively within the province of the jury. The amount of the verdict rendered by the jury was well within the permissible limits of the evidence relative to the damage suffered. In such instances it is not within the province of this court to substitute its judgment for that of the jury in the exercise of its function as a fact finding body. Shorten v. Mueller, 206 Okl. 62, 241 P.2d 187; Liberty Plan Co. v. Smith, 203 Okl. 324, 220 P.2d 239.

■ Defendant further contends the trial court erred in instructing the jury that in assessing plaintiffs' damages, if any, they should include interest on the damages from the date the road was closed. The applicable statutes are 23 O.S.1951, §§ 6, 7, which provide:

"6. Interest upon damages.—Any person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt."

"7. Jury may allow interest.—In an action for the breach of an obligation not arising from contract, and in every case of oppression, fraud or malice, interest may be given in the discretion of the jury."

Plaintiffs seek to uphold the trial court's action upon authority of Oklahoma City v. Hoke, 75 Okl. 211, 182 P. 692; City of Tulsa v. Copp, 127 Okl. 128, 260 P. 16; Manglesdorf Seed Co. v. Pauls Valley Grain & Seed Co., 155 Okl. 270, 8 P.2d 1100, and Oklahoma City v. Wells, 185 Okl. 369, 91 P.2d 1077, 123 A.L.R. 662. The last cited case involved a taking by exercise of the right of eminent domain, and is not applicable herein.

In the Hoke case the action was brought to recover damages for destruction of a corn crop, and the evidence showed the yield which was reasonably certain, the cost of production, and the market price. With these factors the jury could determine the exact amount of the loss at the time of occurrence, so that the amount of damages was subject to precise calculation.

The case of Manglesdorf Seed Co. v. Pauls Valley Grain & Seed Co., supra [155 Okl. 270, 8 P.2d 1101], is not authority for plaintiffs' argument. Therein it was held that the two statutory provisions must be considered together, and that part of the statute which permits allowance of interest "[within] discretion of the jury" refers to damages that are certain, or capable of being made certain by calculation. Even more recently in Deardorf v. Rosenbusch, 201 Okl. 420, 206 P.2d 996, we pointed out that neither of these statutes was to be considered to the exclusion of the other. In this case, as in the matter on appeal, the extent of the claim for damages was neither certain, nor capable of being made certain by calculation. Thus the amount of plaintiffs' claim was not certain until the jury returned a verdict and judgment was entered thereon.

The applicable rule is that expressed in syllabus 2 of City of Chickasha v. Hollingsworth, 56 Okl. 341, 155 P. 859, as follows:

"Interest—Unliquidated Damages. Interest cannot be recovered upon unliquidated damages, where it is necessary for a judgment on verdict to be had in order to ascertain the amount of same."

We are of the opinion that the court erred in instructing the jury that interest might be allowed from the date the road was closed. The judgment herein is modified by setting aside the interest fixed by the jury and directing that interest be calculated from the date of judgment. In all other respects the judgment is affirmed.

HALLEY, WILLIAMS, BLACKBIRD and JACKSON, JJ., concur.

WELCH, C. J., and DAVISON, JOHNSON and CARLILE, JJ., dissent.