Harry **BREWER**, Appellee,

v.

The **CITY OF NORMAN**, Oklahoma, a municipal corporation, Appellant.

No. 46087.

Supreme Court of Oklahoma.

Oct. 22, 1974.

Miskovsky, Sullivan & Miskovsky, by Robert B. Smith, Oklahoma City, for appellee.

William M. Bonnell, Counsel of the City, Richard R. Linn, Jr., Associate Counsel of the City, Norman, for appellant.

BARNES, Justice:

This is an appeal from a judgment in conformity with a verdict for Appellee [hereinafter referred to as "plaintiff"] against Appellant [hereinafter referred to as "defendant" and/or "City"] in the sum of $5,625.00 as property damages in an inverse condemnation action.

Plaintiff's property consists of two adjoining city lots 210 feet deep with frontages of 50 feet each on the west side of North Flood Street, located at a distance of approximately one block south of that street's intersection with Robinson Street, in the defendant City of Norman. The respective Norman street addresses of the two lots are 1300 and 1302 North Flood Street.

The cause of the claimed damages to plaintiff's property lies in the consequences to it of the changes in Flood Street which the City completed making on December 2, 1969.

On that date there stood on the northernmost of plaintiff's lots [at 1302 North Flood Street] a building whose front roof line and porch extended to the public sidewalk running along the west side of North Flood Street in front of plaintiff's property. At that time there was a dirt parking between this sidewalk and said street's western curbing.

The building housed plaintiff's television sales and service business. Between this building and another businessman's build-

ing on the property immediately north of plaintiff's is a double driveway made of concrete, which afforded vehicles and pedestrians ingress and egress between Flood Street and the repair shop in the back of plaintiff's building, as well as between said street and his frame residence on the back, or west end, of this 1300 North Flood Street address. Also on, and previous to, the date of the changes in Flood Street, there stood on plaintiff's southernmost lot, at 1300 North Flood Street, another frame residence.

The changes that the City made in North Flood Street [with the help of Federal funds because of the routing of interstate highway traffic to both Flood and Robinson Streets] consisted of widening the paved portion thereof to the full width of its right-of-way and converting it from a conventional street, with only one traffic lane for north bound traffic and one for south bound traffic, to a four-lane street with two lanes each for north bound and south bound traffic, respectively. When North Flood Street was thus widened in front of plaintiff's property, there was constructed in the street's center a concrete median island separating these north and south bound traffic lanes. This concrete island extended from said street's intersection with Robinson Street, approximately the distance of a block north of plaintiff's property, south to a point approximately parallel to the south wall of plaintiff's television store building. South of this point, the separation of Flood Street's north and south bound traffic lanes was indicated or dictated by two parallel yellow stripes painted down the center of the street past the southernmost of plaintiff's lots and the house standing thereon at 1300 North Flood Street.

It is the effect of these Flood Street improvements on the value of his above described property, without any physical taking thereof, that comprises the gravamen of plaintiff's cause of action, if any, against the defendant City.

When it appeared that access to the driveway extending along the north side of plaintiff's building would be restricted to Flood Street's north bound vehicular traffic by the median island and yellow stripes forbidding such traffic from turning left into it from in front of said building, plaintiff sold, and caused to be moved away, the frame house on the adjoining lot south of it; and he thereafter converted said lot into an off-street parking lot. This arrangement renders off-street parking readily available to vehicles driven to plaintiff's television business either from the north or from the south on Flood Street, but it does not alleviate the difficulties and hazards motorists are now subjected to in attempting to back their vehicles out of the driveway extending along the north side of that business's building.

To prove a part of his cause of action for damages, plaintiff introduced evidence to show that since North Flood Street was widened and its western curb line moved to both the western boundary of said street's right-of-way and the eastern edge of the public sidewalk paralleling it [thus abolishing the dirt parking between the curb and the said sidewalk] motor vehicles can no longer back out of the driveway extending along the north side of plaintiff's building into Flood Street with the same degree of safety as before the above indicated changes in said street, because motorists and truckers cannot see [past the front edge of the building next door north of plaintiff's property] traffic approaching from the north on Flood Street until the rear end of their vehicles are already protruding into said street and are in a precarious position for collisions with such traffic.

Plaintiff also introduced evidence of the cost of his providing the above described off-street parking area on the lot adjoining his business on the south.

The defendant City took the position that the above described improvements to better regulate and accommodate heavy traffic on said North Flood Street approaching its busy intersection with Robin-

son Street were within the police powers of such a municipality, and that any consequential damages therefrom [as distinguished from direct taking of property for such improvements] must be regarded as coming within the context of the legal maxim, "damnum absque injuria", as long as there is no unreasonable, capricious, or absolute denial of ingress or egress to plaintiff's property.

This theory constituted one of the grounds upon which defendant demurred to the only evidence bearing upon defendant's liability ever introduced at the trial.

After this demurrer was overruled, and before the case was submitted to the jury, the parties stipulated that no evidence had been introduced of the unreasonableness, arbitrariness, or capriciousness of the making of the above described changes in Flood Street; and, as far as the record shows, the court gave the jury no instructions concerning the necessity, or absence, of such evidence.

The trial court's unfavorable ruling on defendant's demurrer to plaintiff's evidence was one of the claimed errors relied upon by defendant in its present appeal to review the aforementioned verdict and judgment against it.

In a Memorandum Opinion, the Court of Appeals impliedly approved said ruling when it held that the judgment was sufficiently supported by competent evidence. We disagree, and therefore grant defendant's Petition for Certiorari.

Plaintiff concedes that he neither offered nor introduced any evidence that defendant's installation of the center median on Flood Street in front of his property was arbitrary or capricious. And, on the basis of his argument and the record, we must assume that tacitly, at least, plaintiff also concedes that there was nothing arbitrary or capricious about the other above mentioned Flood Street changes of which he complained at the trial. However, he contends that the evidence established that these changes resulted in damages to his property and says this "is sufficient as long

as the damages are special in nature." This is no answer to defendant's position which is amply supported by the authorities it cites. The essence of this position is indicated in the following quotation from 29A C.J.S. Eminent Domain § 14, p. 202;

> "The limitation and regulation of street or highway traffic are referable to the police power, and not to the power of eminent domain. Accordingly, in the proper exercise of its police power in the regulation of traffic, a state or municipality may do many things which are not compensable to an abutting property owner, such as the re-routing or diversion of traffic, the use of suitable traffic control devices, prescribing one-way traffic, prohibiting particular types of turns at specified places, and restricting the speed, weight, size and character of vehicles allowed on certain highways. Furthermore, a state or municipality may, in the lawful exercise of the police power, regulate the right of ingress or egress to a street or highway without compensation, as long as there is no unreasonable or absolute denial of ingress or egress to the street or highway."

In Gibbons v. Missouri, K. & T. R. Co., 142 Okl. 146, 148, 149, 285 P. 1040, this Court recognized the principles supporting the above quoted statements and the validity of the City's defense in this case by quoting the general rule showing that the exercise of police power, if reasonable, differs from the exercise of eminent domain in that the former, unlike the latter, does not necessarily give a property owner, consequentially injured thereby, a cause of action.

On the basis of the foregoing, we hold that plaintiff's evidence, without anything therein to indicate that the Flood Street changes effected an absolute denial of ingress or egress between said street and his property, or that they constituted an unreasonable or capricious exercise of the City's police power to regulate and accommodate the movement of traffic on said street, was insufficient to establish a cause of action

for the damages he claimed. The trial court should therefore have sustained defendant's demurrer to his evidence. On account of said court's error in overruling said demurrer, defendant's Petition for Certiorari is hereby granted, the Court of Appeals' decision is vacated, and the judgment appealed from is reversed with directions to the trial court to vacate said judgment and render judgment for defendant City.

DAVISON, C. J., WILLIAMS, V. C. J., and IRWIN, HODGES, LAVENDER, SIMMS and DOOLIN, JJ., concur.

BERRY, J., dissents.

BERRY, Justice (dissenting):

I disagree with the majority opinion.

In my view where a city's street improvements materially impair an abutting owner's right of access to the street the abutting owner is entitled to compensation.

Art. II § 24, Okla.Const., provides:

"Private property shall not be taken or damaged for public use without just compensation. * * *"

This section authorizes recovery for damages notwithstanding there is no physical invasion of plaintiff's property if plaintiff suffers a special injury different in kind, and not in degree, from that suffered by the community in general. Atchison, T. & S. F. Ry. Co. v. Terminal Oil Mill Co., 180 Okl. 496, 71 P.2d 617; Chicago, R. I. & P. Ry. Co. v. Hughes, 180 Okl. 604, 71 P.2d 693.

We have long recognized that a property owner has a right of access in the street upon which his property abuts, and whenever that right is cut off or materially impaired the abutting owner suffers an injury different in kind, and not merely in degree, from that suffered by the general public. Atchison, T. & S. F. Ry. Co. v. Terminal Oil Mill Co., supra; Grand River Dam Authority v. Misenhimer, 195 Okl. 682, 161 P.2d 757; Oklahoma Turnpike Authority v. Chandler, Okl., 316 P.2d 828.

In Atchison, T. & S. F. Ry. Co. v. Terminal Oil Mill Co., supra, we further stated:

"* * * to recover damages for the obstruction of the street, it is not essential that the access to the property has been entirely cut off. * * *"

The evidence indicates prior to the time the street improvements were made in this case plaintiff's driveway was located at the far north edge of his property. Plaintiff's TV shop was located south of the driveway and fronted on Flood Avenue. Plaintiff's residence was located to the rear of the TV shop. A rental house was located upon the south portion of the plaintiff's property.

The driveway was the sole means of ingress and egress to the TV shop and residence.

As a part of the street improvement the street was widened within the city's pre-existing right of way. This extended the street to within 3 feet of another commercial building located immediately north of plaintiff's driveway.

Plaintiff testified after the improvements one backing from his driveway is unable to see traffic approaching from the north until his back wheels are protruding into the traffic lane. He admitted there is no barrier preventing southbound traffic from entering his driveway and that if no more than two vehicles are in the driveway one can turn around and pull out frontwards. He also testified if one drives out frontwards and gets to the extreme south side of the driveway at an angle heading southwest one can see by the corner of the building before the front end of the car enters the street. He testified this would take some effort.

The trial court determined any damages suffered by plaintiff were special damages and allowed the jury to determine the amount of such damages, if any.

This was in effect a finding as a matter of law that plaintiff's right of access was materially impaired.

**1138**

In Atchison, T. & S. F. Ry. Co. v. Terminal Oil Mill Co., supra, we held that under the facts presented therein the issue of whether plaintiff's right of ingress and egress had been materially impaired was a question of fact for the jury to determine. See also Oklahoma Turnpike Authority v. Chandler, supra; Henthorn v. Oklahoma City, Okl., 453 P.2d 1013.

If that line of authority is followed this case should be reversed and remanded to the trial court with directions to allow the jury to determine whether plaintiff's right of ingress and egress has been materially impaired.

However, it is my opinion this issue should be a question of law for the court, [see Annotation, Access to Highway—Compensable Limitation, 42 A.L.R.3d 13, at p. 71] and in light of the undisputed evidence presented the trial court correctly determined that plaintiff's right of ingress and egress was materially impaired by the street improvements.

City contends any impairment of access to plaintiff's property was not caused by the improvements, but by construction of the adjacent building to within three feet of City's right of way. I do not agree.

We have previously allowed property owners to recover for damages sustained when a city widened a street to the full extent of a pre-existing right of way.

In City of Tulsa v. Hindman, 128 Okl. 169, 261 P. 910, the owner constructed improvements to within 1.4 feet of the City's right of way and the City then widened the street to its full width. We affirmed a judgment for the owner for depreciation in the market value of his property. We stated the question was whether a city is liable to an abutting owner for destruction of a sidewalk by converting it into a street or automobile traffic.

However, we stated:

" * * * before answering the question, to restrict it to the particular subject matter, can such be done without

adequate compensation for all resulting injuries to the property when this street * * * is extended up to 18 inches of one of plaintiff's buildings intended for habitation or business?

"We think not. * * * *"

This clearly indicates plaintiff there was not only allowed to recover damages resulting from removal of the sidewalk, but was also allowed to recover damages resulting from widening of the street to within 18 inches of plaintiff's buildings. This recovery was allowed even though plaintiff had constructed his buildings to within 18 inches of the pre-existing right of way.

The City further contends plaintiff admitted the parking lot on the south portion of his tract was adequate to handle all of his business traffic and access to the parking lot was not impaired.

Plaintiff's testimony does indicate after the street improvements were made he removed the rental house from the south portion of his property and constructed a parking lot in its place. It can reasonably be inferred plaintiff was compelled to do this due to the impairment of access to his driveway.

I do not believe the City should be allowed to rely upon plaintiff's subsequent actions to mitigate damages. See Oklahoma Turnpike Authority v. Burk, Okl., 415 P.2d 1001.

I agree damages resulting from construction of a center median are not generally considered compensable damages.

However, in the present case it would be difficult to apportion damages between those arising from widening of the street and those resulting from installation of the center median. In similar circumstances we have allowed recovery for all damages resulting from the street improvements. State ex rel. Department of Highways v. Aker, Okl., 507 P.2d 1227; State ex rel. Dept. of Highways v. Bowles, Okl., 472 P.2d 896.

There was evidence the street improvements impaired the value of plaintiff's property.

It is my opinion the judgment of the trial court should be affirmed.

For the above reasons I respectfully dissent.