1997 OK 68

**Howard R. SULLIVANT, Appellant,**

v.

**The CITY OF OKLAHOMA CITY, Appellee,**

and

**The City of the Village, Defendant.**

**No. 86486.**

Supreme Court of Oklahoma.

May 20, 1997.

---

Joseph C. Schubert, Oklahoma City, for appellant.

William O. West and Cindy L. Richard, Oklahoma City, for appellee.

SIMMS, Justice.

¶ 1 A first impression question presented by this cause is whether damage done to an apartment by police in the execution of a valid search warrant is a "taking" which requires compensation pursuant to Oklahoma Constitution Art. 2 § 24. We hold that such damage does not constitute a compensable taking within the meaning of Art. 2 § 24. We also hold that due to a disputed question of material fact on appellant's theory of recovery based upon the Governmental Tort Claims Act, this case must be remanded for further proceedings on that theory. We do not address other theories which may or may not be available as defenses for the cities.

¶ 2 In the execution of a valid search warrant, police officers from Oklahoma City and the Village damaged the outer door, and two interior doors, of an apartment unit in an apartment complex owned by appellant, hereafter referred to as landlord. The search yielded evidence of drug activity and drug selling by the tenants. Damage to the doors amounted to $718.00. Landlord timely filed a tort claim with both Oklahoma City and The Village. The claims were denied by both cities and landlord timely filed the present action against the cities.

¶ 3 Landlord asserted two alternate theories of recovery. Landlord alleged that the cities were liable for the damage under either (1) the Governmental Tort Claims Act ("GTCA"), 51 O.S. § 151 et. seq., or (2) Oklahoma Constitution Art. 2 § 24, which states in part that "[p]rivate property shall not be taken or damaged for public use without just compensation." The cities filed motions for summary judgment on both theories, and the landlord filed a motion for summary judgment on his "taking" theory.

¶ 4 The trial court granted the cities' motions for summary judgment and landlord appealed. The Court of Civil Appeals affirmed the trial court's judgment. We previously granted certiorari. We vacate the opinion of the Court of Civil Appeals and affirm in part, and reverse and remand in part, the judgment of the trial court.

¶ 5 Landlord first contends that the trial court erred in granting summary judgment in favor of the cities on the GTCA theory because (1) there were disputed issues of fact concerning whether the police properly executed the search warrant and (2) under the facts and circumstances of this case, the police were estopped from entering the apartment without first notifying the apartment manager, who had agreed to let them in with a key. Landlord also argues that he was entitled to summary judgment on his taking theory, explaining that several states, when faced with similar facts, have found property owners' claims to be compensable, and urging this Court to adopt the reasoning contained in those cases.

I.

*The GTCA Theory*

¶ 6 In the GTCA, the state waives its sovereign immunity only to the extent and in the manner provided in the act. 51 O.S. 1991 § 152.1. A city shall be liable only for loss resulting from torts of its employees acting within the scope of their employment subject to the limitations and exceptions specified in the act. 51 O.S. 1991 § 153. Cities alleged that they are not liable for landlord's loss due to the exemptions listed at 51 O.S. § 155.

The relevant § 155 exemptions provide that the city "shall not be liable if a loss or claim results from: ... (3) [e]xecution or enforcement of the lawful orders of any court; ... and (9) [e]ntry upon any property where that entry is expressly or impliedly authorized by law."

¶ 7 Landlord claimed, in his response to the motions for summary judgment, that there is a disputed issue of fact concerning whether the police properly executed the search warrant, attaching an affidavit from a neighbor, who claims that the police did not "knock and announce" themselves, as required by 22 O.S. 1991 § 1228[1], prior to breaking down the outer door to the apartment. Landlord concludes that if the police improperly executed the warrant, then they cannot claim the exemptions under § 155 of the GTCA, relying on *Roberts v. City of Stillwater,* 646 P.2d 6 (Okl.Civ.App.1982). In *Roberts,* the Court of Civil Appeals held that if an arrest was invalid, the city could not rely on the exemptions in the GTCA. See also 22 O.S. § 1240, which provides that a peace officer who willfully exceeds his authority in executing a search warrant, or executes it with unnecessary severity, is guilty of a misdemeanor.

■ ¶ 8 Therefore, the cities may not rely upon the exemptions in the GTCA if the police failed to give notice of their authority and purpose, as is required by 22 O.S. 1991 § 1228(1) because their entry would not have been authorized by law and the execution of the search warrant would not have been lawful. The record reflects that the search warrant did not contain the instruction that no notice was necessary, and thus, the police were not excused from the "knock and announce" requirement. 22 O.S. 1991 § 1228(2).

¶ 9 Accordingly, there is a disputed issue of material fact concerning whether the police complied with 22 O.S. 1991 § 1228, which precluded the grant of summary judgment on landlord's GTCA claim. *Ross v. City of Shawnee,* 683 P.2d 535 (Okl.1984). The judgment of the trial court is reversed on this issue and this cause is remanded for further proceedings on landlord's GTCA theory.

■ ¶ 10 Landlord also contends the police are estopped from escaping liability for the damage in this case because they misled the apartment manager by promising him that they would give him prior notice before arriving at the apartment so the manager could open it for them. An examination of the affidavits attached to the motions for summary judgment does not prove a promise on the part of police to notify the manager prior to entry, but rather shows that the manager was eager to be there when police arrived and called to ascertain when the police might be coming.

■ ¶ 11 Equitable estoppel is generally understood to prevent one party from taking a position which is inconsistent with an earlier action that places the other party at a disadvantage, where that party has, in good faith, relied on the representation or position. *First State Bank v. Diamond Plastics,* 891 P.2d 1262 (Okl.1995). Estoppel does not apply to the present situation. Even if the police promised the manager that they would give advance notice, we are not going to impose a requirement upon the police to notify a landlord before the execution of a valid search warrant on premises occupied by a tenant. The imposition of a prior notice to a landlord requirement might only serve to alert the suspects to the intentions of the authorities, and thereby defeat legitimate governmental efforts to catch criminals and find incriminating evidence. See, *Looney v. City of Wilmington,* 723 F.Supp. 1025, 1030 (D.Del.1989).

1. 22 O.S.1991 § 1228 provides as follows:
A peace officer may break open an outer or inner door or window of a house, or any part of the house, or anything therein, to execute the warrant when:
1. The officer has been refused admittance after having first given notice of his authority and purpose; or

2. Pursuant to an instruction inserted in the search warrant by the magistrate that no warning or other notice of entry is necessary because there is probable cause to believe that such warning or other notice would pose a significant danger to human life.

## II.

### *The Taking Theory*

■ ¶ 12 Landlord also argues that the trial court erred in granting summary judgment for the cities on his taking theory of recovery. Landlord claims that his property was damaged by the police for public use, and thus, according to Oklahoma Constitution Art. 2, § 24, and 27 O.S. 1991 § 16 [2], he is entitled to just compensation. We determine that landlord does not have a taking claim pursuant to Art. 2 § 24 because (1) a reasonable construction of Art. 2 § 24 does not support a taking claim under these circumstances, (2) Art. 2, § 24 may not be used to permit recovery for the tortious actions of government employees and (3) the proper exercise of police power in the present case did not amount to a "taking" within the meaning of Art. 2, § 24.

■ ¶ 13 Art. 2, § 24, provides in full as follows:

Private property shall not be taken or damaged for public use without just compensation. Just compensation shall mean the value of the property taken, and in addition, any injury to any part of the property not taken. Any special and direct benefits to the part of the property not taken may be offset only against any injury to the property not taken. Such compensation shall be ascertained by a board of commissioners of not less than three freeholders, in such manner as may be prescribed by law. Provided however, in no case shall the owner be required to make any payments should the benefits be judged to exceed damages. The commissioners shall not be appointed by any judge or court without reasonable notice having been served upon all parties in interest. The commissioners shall be selected from the regular jury list of names prepared and made as the Legislature shall provide. Any party aggrieved shall have the right of appeal, without bond, and trial by jury in a court of record. Until the compensation shall be paid to the owner, or into the court for the owner, the property shall not be disturbed, or the proprietary rights of the owner divested. When possession is taken of the property condemned for any public use, the owner shall be entitled to the immediate receipt of the compensation awarded, without prejudice to the right of either party to prosecute further proceedings for judicial determination of the sufficiency or insufficiency of such compensation. The fee of land taken by common carriers for right of way, without the consent of the owner, shall remain in such owner subject only to the use for which it is taken. In all cases of condemnation of private property for private or public use, the determination of the character of the use shall be a judicial question.

¶ 14 The reason for setting out Art. 2, § 24 in full is to show that the provision, taken in its full context, clearly relates to condemnation proceedings, where real property is actually taken and used for a public project. In construing a statutory or constitutional provision, the primary object is to ascertain the intent of the framers. In ascertaining this intent, the language of the entire provision should be construed in light of its general purpose and object. *Midwest City v. Harris,* 561 P.2d 1357 (Okl.1977). A reasonable construction of Art 2, § 24 shows that it is not intended to apply to the damaged apartment doors in this case.

¶ 15 We have not allowed parties to use Art. 2, § 24 as a basis for recovery against government for tortious actions of government employees. In *Welker v. Annett,* 44 Okl. 520, 145 P. 411 (1914), the plaintiff sued the Board of Commissioners of Pawnee County for damage done to his cattle allegedly caused by grass poisoned by insecticide spread by the county. We found that the action was one for tort and the county was not liable (there was complete sovereign im-

---

**2.** 27 O.S. § 16 is similar to Art. 2 § 24 in that it provides in pertinent part that "[i]n every case wherein private property is taken or damaged for public use, the person whose property is taken or damaged shall be entitled to just compensation." However, this statute is limited to the acquisition of real property for public use in a project or program using state, federal or local funds. 27 O.S. § 9. Thus, it is expressly inapplicable to the present case, but does indicate how Art. 2 § 24 should be interpreted.

munity for torts at that time). We dismissed plaintiff's argument that the damage constituted a taking under Art. 24, § 2, finding that the damages were purely consequential. See also the discussion contained in "State Sovereign Immunity in Tort; Oklahoma's Long and Tortuous Road," by Robert G. Spector, 34 *Oklahoma Law Review* 526, 534–537 (1981).

¶ 16 Similarly, in *State ex rel. Coffey v. District Court*, 547 P.2d 947 (Okl.1976), the Oklahoma Air National Guard fired a 19 gun salute at the governor's inauguration and the concussion caused damage to several houses nearby. We issued a writ, prohibiting the district judge from proceeding with a suit filed by the landowners for inverse condemnation. We found that there was not a sufficient interference with the landowners' use and enjoyment of their land to constitute a "taking" by the sovereign. We also found that there was no *intention* on the part of the state, in this single, isolated act, to exercise the power of eminent domain or to take the owners' property for a public use.

¶ 17 Although landlord tries to distinguish *Coffey* from the present case by pointing out the police *intentionally* damaged the doors, the intention discussed in *Coffey* is the intention to take property for a public use, not the intention to do the damage. In the present case, the police intended to execute the search warrant, not to take or use landlord's property.

¶ 18 Additionally, our interpretation of Art. 2, § 24 has determined that the right to compensation for government interference with a landowner's property rights is not unlimited. In *Gibbons v. Missouri, K. & T.R. Co.*, 142 Okl. 146, 285 P. 1040, 1043 (1930), we held that all property is "held subject to the general police power of the state to control and regulate its use in proper cases so as to secure the general safety, the public welfare, and the peace and good order and morals of the community...." Quoting 6 R.C.L. 201, we found that "acts done in the proper exercise of the police power, which merely impair the use of property, do not constitute a taking within the meaning [of Art. 2 § 24]...." In *Gibbons*, we found that the legislative grant of power to the Corpora-

tion Commission to order the removal of signs which obstruct railroad crossings was a reasonable exercise of police power and that the plaintiff was not entitled to compensation.

¶ 19 The distinction between the state's right of eminent domain (taking for a public use), for which compensation is required, and the state's exercise of police power, which may infringe upon or damage property, but no compensation is required, is explained *Holtz v. Superior Court*, 3 Cal.3d 296, 90 Cal.Rptr. 345, 475 P.2d 441 (1970) and *Customer Company v. City of Sacramento*, 10 Cal.4th 368, 41 Cal.Rptr.2d 658, 895 P.2d 900 (1995). There are two manifestations or types of the exercise of police power. The exercise of police power may lead to non compensable damages. One type of police power is the power to regulate use of property. This is the type discussed in *Gibbons v. Missouri, Kansas & Texas Railroad Co., supra*. The other type of police power occurs in situations where property is damaged or destroyed as a necessity in order to protect the health or safety of the public. Examples of this use of police power includes destroying a house to construct a firebreak, destroying infested fruit, or destroying bridges during wartime to halt the advance of the enemy. See, *Holtz, supra*, at p. 446, and *Customer Co., supra*, at pp. 910–911. California also recognizes this latter employment of police power to encompass actions of the police in enforcing the criminal laws. We recognized the existence of these two manifestations of police power in *Phillips Petroleum Co. v. Corporation Commission*, 312 P.2d 916, 920 (Okl.1957).

¶ 20 Similarly, in *Brewer v. City of Norman*, 527 P.2d 1134, 1136 (Okl.1974), we noted that the exercise of police power (such as traffic regulation) is different from the power of eminent domain and does not give the property owner a cause of action for inverse condemnation. In *Brewer*, the owner sought recovery from the city for damage to his property caused by street improvements.

¶ 21 In *Mattoon v. City of Norman*, 617 P.2d 1347 (Okl.1980), we explained this concept further by stating that the validity of the exercise of police power does not neces-

sarily preclude compensation for property taken or damaged by such exercise, but there must be sufficient interference with landowner's use and enjoyment to constitute a taking. In *Mattoon*, the owner complained of the restriction on the use of his land due to a flood plain ordinance and complained that part of his land was taken because it was flooded as the result of city public works.

¶ 22 In support of his argument that the damage done by the police constitutes a taking within the meaning of Art. 2, § 24, landlord cites three cases from other states which recognize this theory. These cases are *Wallace v. City of Atlantic City*, 257 N.J.Super. 404, 608 A.2d 480 (1992), *Wegner v. Milwaukee Mutual Ins. Co.*, 479 N.W.2d 38 (Minn. 1991) and *Steele v. City of Houston*, 603 S.W.2d 786 (Tex.1980). New Jersey, Minnesota and Texas all have constitutional provisions which are similar to Art. 2, § 24.

¶ 23 In *Wallace*, as in the present case, the police damaged some doors in executing a search warrant. The New Jersey Superior Court judge found that the damage did constitute a compensable taking because there was a physical intrusion for a public purpose and because an innocent third party should not bear the sole financial burden of a police investigation undertaken for the public good. The court found that the intended beneficiary of the government action was not the owner, but society as a whole.

¶ 24 The *Wegner* and *Steele* cases contain similar reasoning. In *Wegner*, the property owner incurred damage to his home when police fired several canisters of tear gas into the home while attempting to apprehend an armed suspect who had taken refuge there while being chased by the police. In *Steele*, the police set fire to owner's home while attempting to recapture three escaped convicts who had taken over the house. Both courts emphasize that the municipalities' duty to compensate the owners is not based on eminent domain or inverse condemnation and is no longer excused by labeling the taking as an exercise of police powers. The courts found that the damage to the property

was a public use and the owners were entitled to compensation by the terms of the constitutional provisions. In *Steele*, the court noted however, that the city may defend by showing proof of a great public necessity. In *Wegner*, as in *Wallace, supra*, the court found that it was unfair to allocate the entire risk of loss to an innocent homeowner for the good of the public.

¶ 25 On the other hand, several states have not permitted the owners to recover under similar circumstances. We find the reasoning in these cases, especially the discussion in *Customer Co. v. City of Sacramento*, 10 Cal.4th 368, 41 Cal.Rptr.2d 658, 895 P.2d 900 (1995) to be more in accord with our construction of Art. 2, § 24 and the relevant decisional authority discussed above.

¶ 26 In *Customer Co. v. City of Sacramento, supra*, the California Supreme Court held that an owner may not recover in inverse condemnation under the "taking" provision in the California Constitution for damage done to its store by police when attempting to apprehend a suspect who was trapped by police in the store. The court held that the constitutional provision [3] "was never intended and has never been interpreted to impose a constitutional obligation upon the government to pay 'just compensation' whenever a governmental employee commits an act that causes loss of private property." (*Id.*, 41 Cal.Rptr.2d at 664, 895 P.2d at p. 906). The court also stated that the addition of the "or damaged" language to the taking provision merely expanded the circumstances when a private owner may recover when the state takes property for a public use, or a public work causes damage to adjacent property, and that the language has never been extended to apply outside the realm of eminent domain. According to the court, such property damage is only recoverable, if at all, under general tort principles.

¶ 27 The California Supreme Court further points out that to allow compensation under these circumstances might well deter law enforcement officers from acting swiftly and effectively to protect public safety in emer-

---

**3.** The California constitutional provision, almost identical in meaning to Art 2, § 24, states as follows: "Private property may be taken or dam-

aged for public use only when just compensation ... has first been paid to, or into court, for the owner."

gency situations. Although the actions of the police in the present case did not occur in an emergency situation, the same concern against deterring police from performing lawful investigations, searches and arrests exists here. Also persuasive is the statement made in the concurring opinion in *Customer Co.* that the damage done by the police in that case was also not a "use" of property by the state, and thus, the constitutional provision did not apply.

¶ 28 In addition to California, several other states have denied recovery to a property owner in inverse condemnation or under a similar constitutional provision that prohibits taking without just compensation. *McCoy v. Sanders,* 113 Ga.App. 565, 148 S.E.2d 902 (1966), *Blackman v. City of Cincinnati,* 140 Ohio St. 25, 42 N.E.2d 158 (1942), and *Indiana State Police v. May,* 469 N.E.2d 1183 (Ind.App.1984)[4].

¶ 29 Consequently, we determine that the trial court correctly granted the cities' motions for summary judgment on the landlord's taking theory.

¶ 30 Accordingly, the judgment of the trial court is AFFIRMED on landlord's taking theory, and REVERSED AND REMANDED for further proceedings consistent with this opinion on landlord's GTCA theory of recovery.

LAVENDER, HARGRAVE, WILSON and WATT, JJ., concur.

KAUGER, C.J., and SUMMERS, V.C.J., and HODGES and OPALA, JJ., concur in Part 1, dissent to Part 2.

---

4. In addition to the present case, our Court of Civil Appeals recently decided that property owners could not recover from the city under a taking theory where property was damaged during a shoot-out between police and an armed murder suspect. *Brannon v. City of Tulsa,* 932 P.2d 44 (Okl.Civ.App.1996). The case was decided on the basis that the damage was caused by the murder suspect, a third party, rather than the city.