## CHICAGO, R. I. & P. RY. CO. et al. v. JENNINGS et al.

No. 24672.    Jan. 21, 1936.

W. R. Bleakmore, John Barry. W. L. Farmer, Robert E. Lee, Cruce & Franklin, W. T. Stratton, and Harlan T. Deupree, for plaintiffs in error.

Suits & Disney and Frank C. Crouch, for defendants in error.

RILEY, J. On and prior to February 18, 1930, Lydia Jennings was the owner of lots 6 and 7, in block 2, Riverside addition to Oklahoma City. On that date she conveyed said lots to her children. A. C. Jennings, Ada Patterson, and Ella Spencer, giving separate deeds conveying an undivided one-third interest to each of said grantees. Ada Patterson placed her deed of record, but the deeds to the other two were unrecorded when this action was commenced.

The lots are located on the south side of Pine street, which runs east and west, and is about one block south of the right of way of the Chicago, R. I. & P. Ry. Company and the St. Louis & S. F. Ry. Company. Walker avenue runs north and south and intersects Pine street some 350 or 400 feet west of the lots. Walker and Robinson streets are both main thoroughfares through the city.

In October, 1930, the railway companies commenced the construction of an underpass on Walker avenue. The underpass commences on Choctaw avenue north of the railway tracks and emerges a short distance south of the intersection of Walker avenue and Pine street. The result was to interfere to some extent with the entrance on Walker avenue from Pine street.

The construction of the underpass was in compliance with an order of the Corporation Commission, and under an agreement or arrangement with the city of Oklahoma City. No part of the lots involved herein was occupied in the construction of the underpass.

In March, 1931, this action was commenced by Lydia Jennings in the district court of Oklahoma county against the Chicago, R. I. & P. Ry. Company, Choctaw, Oklahoma & Gulf Railroad Company, St. Louis & S. F. Ry. Company, and the city of Oklahoma City. Afterwards Albert C. Jennings, Ada Patterson, and Ella Spencer applied for leave and were permitted to intervene as parties plaintiff. The action is in the nature of condemnation proceedings. The petition, after stating the proceedings under which said underpass was being constructed, the location thereof relative to the lots, alleged that a similar underpass on South Robinson avenue would be constructed; the petition then alleged that Walker avenue at the intersection of Pine street had been excavated to a depth of about ten feet below the established grade, and that the result would be to cut off or wholly close all traffic from Pine street into Walker avenue, and that ultimately plaintiff would be deprived of access to Robinson avenue, or be compelled to detour or go south by Hudson avenue, a street between Walker and Robinson, and thence west to Walker or east to Robinson, in order to get to the main business section of the city. That by reason thereof plaintiff's lots were greatly depreciated in value, that plaintiff had been damaged thereby, that no com-

pensation had been paid for such damage, and that defendants and each of them had refused to compensate plaintiff.

The prayer was for the appointment of commissioners to view the premises and assess the damages.

Notice was served upon the defendants above named.

Commissioners were appointed. They filed their report, assessing the damage of petitioner by reason of the injury, depreciation, and damage of said property at $600.

Defendants in due time filed their objection to the jurisdiction of the court, demurred to the petition, and filed motion to vacate the order appointing commissioners, excepted to the report of the commissioners, moved to quash and set aside said report, and in every way raised the question of jurisdiction and power of the court to proceed in said matter, and complained of the right of plaintiff to maintain the action. All being overruled, demand for a jury trial was filed by each of the defendants.

Defendants filed answers in which they again challenged the jurisdiction of the court and the right of plaintiffs to maintain the action as in condemnation, and specifically denied that plaintiffs were damaged, or that said lots were affected by the construction of said underpasses or in any way or manner damaged different from other property in the vicinity.

Reply was by general denial.

The cause was tried to a jury, resulting in a verdict and judgment for plaintiffs in the sum of $350, and defendants appeal.

The first and principal proposition presented is that there is no provision of law authorizing the commencement and prosecution of a condemnation proceeding against a railroad company or city for alleged damages to property, no part of which is taken or occupied for public use, and that consequential damages, such as are claimed in the action, must be recovered, if at all, in in a common-law action brought for that purpose.

Section 24, art. 2, of the Constitution provides:

"Private property shall not be taken or damaged for public use without just compensation. Such compensation * * * shall be ascertained by a board of commissioners of not less than three freeholders, in such manner as may be prescribed by law. * * * Any party aggrieved shall have the right of appeal without bond, and trial by jury in a court of record."

It has been held in a number of cases that consequential damages arising from the construction of a public improvement may be recovered, the right of recovery being based upon section 24, art. 2, of the Constitution, and particularly the words "or damaged" following the word "taken." City of Muskogee v. Hancock, 58 Okla. 1, 158 P. 622; City of Tulsa v. Hindman, 128 Okla. 169, 261 P. 910; Page v. Oklahoma City, 129 Okla. 28, 263 P. 448; State Highway Commission v. Smith, 146 Okla. 243, 293 P. 1002.

The latter case was a proceeding in eminent domain commenced by the landowner, and was for consequential damages to land no part of which was actually occupied. It was there held that the landowner could commence and prosecute the action under the provisions of chapter 118, S. L. 1927. That act was applicable only to cases in which the construction or location of any state highway "* * * shall require that private property be taken or damaged." It provides that the compensation for taking or damaging may be ascertained and the property acquired and paid for in the manner provided by law for the exercise of the right of eminent domain by railroad companies. Therein it will be noted the proceedings by the landowner are authorized whether the land be taken or damaged. But nowhere in the statutes is provision made for the owner of land to institute and prosecute condemnation proceedings for the assessment of consequential damages in a case where public improvements are made by a railroad company or a city where no part of the owner's property is occupied.

Section 11928, O. S. 1931, authorizes railroad companies to enter upon, take, appropriate, and hold such real estate as may be necessary for its road, track, shops, station, grounds, etc.

Section 11931 provides that if the owner of any real property over which any railroad corporation may desire to locate its road shall refuse to grant the right of way through and over his premises, the district judge of the county, upon the application or petition of either party, after notice as therein provided, shall appoint a commission of three freeholders to inspect the property, consider the injury, and assess the damages, etc.

It will be observed that this applies only

to land over which the railroad company may desire to locate its road.

The latter part of section 11935, O. S. 1931, provides:

"* * * that in case any corporation or municipality authorized to exercise the right of eminent domain shall have taken and occupied for purposes for which it might have resorted to condemnation proceedings, as provided in this article, any land, without having purchased or condemned the same, the damage thereby inflicted upon the owner of such land shall be determined in the manner provided in this article for condemnation proceedings."

Either party, then, is authorized to instifute the proceedings when and only when, in case of railroads, the railroad corporation desires to locate its road over the land involved, and in cases as to any corporation or municipality authorized to exercise the right of eminent domain, when such corporation or municipality shall have taken and occupied any land for purposes for which it might have resorted to condemnation proceedings.

As to railroad corporations and municipalities having power to exercise the right of eminent domain, neither party is authorized to institute condemnation proceedings unless the land or some part thereof is desired as a location for a railroad or has actually been taken and occupied for public purposes.

In case the location and construction of a state highway requires the taking or damaging of property, either party may institute the proceedings under the special provisions of chapter 118, S. L. 1927, as now amended by chapter 258, S. L. 1929 (sec. 1093, O. S. 1931).

State Highway Commission v. Smith, supra, is cited and relied upon by defendants in error, but it clearly has no application here, in that it is governed by the provision of chapter 118, S. L. 1927, supra. Public Service Co. v. Raburn, 162 Okla. 81, 19 P. (2d) 167, is also cited, but in that case a part of the land was actually occupied.

Other cases are cited wherein consequential damages were allowed, but they were recovered in common-law actions.

While the Constitution does provide that private property shall not be taken or damaged for public use without just compensation, and that the compensation shall be ascertained by a board of commissioners of not less than three freeholders in such manner as may be prescribed by law, it appears that so far, except as to state highway cases, the Legislature has never provided for the appointment of such commissioners except in cases where a railroad corporation desires to locate its road over the land, or where land has actually been taken and occupied.

We are unable to find authorization by legislative act for a judge to appoint commissioners, or authority for commissioners to act, except in cases above pointed out. We decline in this case to determine whether the constitutional provision is self-executing.

But it does not necessarily follow that the judgment in this case must be reversed because the judge possibly erroneously and without legislative authority appointed a board of commissioners and the board made its report, etc.

In this case the petition of plaintiff set forth everything necessary to allege in a common-law action for consequential damages. Summonses were regularly issued and served upon the defendants as in a common-law action.

The issues were finally joined on the question of whether or not plaintiffs' property had been damaged as a consequence of the construction of the underpass on Walker avenue. The cause was tried and evidence submitted, and the cause was submitted to the jury on the sole question of whether or not plaintiffs had been damaged, and if so, to what extent.

All the cases hold that in an action at law to recover purely consequential damages, and where no part of the owner's property is actually taken and occupied, but damages resulting from some public use are claimed, the measure of damages and the rules of law governing the introduction of evidence are the same as in condemnation proceedings.

In Aldis v. Union El. R. R. Co., 203 Ill. 567, 68 N. E. 95, it is held:

"In case property is not actually taken for the purpose of an elevated railroad, the owner may sue for damage to the property after the road is constructed, but the measure of damages and rules of evidence are the same as though a condemnation proceeding had been brought to determine the damage prior to construction."

Here the reverse is true; the action was commenced as in condemnation proceedings,

but was in fact tried in the district court under pleadings sufficient in an action at common law for damages, and the measure of damages and rules of evidence are the same.

In Chicago, & E. I. R. Co. v. Loeb, 118 Ill 203, it is said:

"The action for damage may be regarded as in the nature of one kind of condemnation proceeding."

In Davenport, R. I. & N. Ry. Co. v. Sinnet, 111 Ill. App. 75, it is said:

"In such an action as this (an action for damages) the measure of damages and the rules of evidence are the same as in a condemnation suit."

If this be true, all the parties being in court and the pleadings being such as to raise proper issues in a common-law action for damages, there is no sound reason why the proceedings as to appointment of appraisers, their report, the objections thereto, and the rulings of the court thereon, if not authorized, may not be ignored.

Other assignments go to the refusal of requested instructions.

We find no error therein. The instructions given properly covered the law applicable, under the evidence, to questions covered by the requested instruction. Finally, plaintiffs in error complain because the court instructed the jury to the effect that the measure of damages sustained is the difference between the fair cash market value of the property before the construction of the underpass and the fair cash market value after its construction, irrespective of benefits.

"Irrespective of benefits" is the part to which objection is made. It is contended that the statute under which the court held the action would lie (chapter 118, S. L. 1927) specifically provides that "in determining the damages or compensation to be paid the owner thereof, the court or jury will take into consideration the benefits to be derived by the owner as well as the damages sustained thereby."

This is the statute referred to above applying only to state highway cases, which we have held has no application. But if that statute were applicable, the Legislature evidently overlooked the plain provision of the Constitution, which in section 24, art. 2, supra, provides: "Such compensation, irrespective of any benefits from any improvement proposed, shall be ascertained," etc.

To reverse the judgment in this case merely because the judge appointed commissioners and the commissioners acted, all without specific legislative authorization, would not necessarily end the litigation. Plaintiffs would have the right to commence a new action within one year, if not the right to reform the pleadings in this case and proceed in a new trial. In such case the issues would be substantially the same. The same rules of evidence would be applicable and the measure of damages would be the same. It would be merely to retry the same issues under the same rules as were applied in the trial in this case. No useful purpose would be served.

The judgment is affirmed.

McNEILL, C. J., OSBORN, V. C. J., and BUSBY and PHELPS, JJ., concur.