**STATE of Oklahoma ex rel. DEPARTMENT OF HIGHWAYS of the State of Oklahoma, Plaintiff in Error,**

v.

**Haskell BURDEN, a single man; City National Bank, Sayre, Oklahoma, Defendants in Error.**

**No. 38311.**

Supreme Court of Oklahoma.

April 14, 1959.

Max Cook, Oklahoma City, for plaintiff in error, State of Oklahoma ex rel. Department of Highways of the State of Oklahoma.

T. R. Wise, and H. C. Ivester, Sayre, for defendant in error.

BLACKBIRD, Justice.

This appeal is from a judgment in condemnation proceedings instituted by plaintiff in error, as condemnor, hereinafter referred to as plaintiff, against the defendants in error, as defendants. As the defendant in error, Haskell Burden, is the owner and condemnee of the property and the bank named as the other defendant in error made no appearance at the trial, or in this appeal, Burden is the party we will hereinafter refer to as defendant.

The premises involved is a "drive-in" Dairy Queen, or King, located in Sayre, Oklahoma, on a corner lot shaped like a "V", formed by the junction of Sayre Avenue and U. S. Highway 66. The condemnation of that part of defendant's 'lot in the tip, or point, of the "V" was made necessary by plaintiff's widening and improvement of the named highway, which said improvement included the construction of curbing along the southern edge of the highway parallel to the northern boundary of defendant's property. It was upon the construction of this curbing, with driveway openings therein, affording Highway 66 motorists less access to his drive-in's parking space than they had before, that defendant based part of his claims for damages.

Plaintiff's original petition, filed in January, 1957, described, by metes and bounds, an area of 126 square feet as the property being condemned, but a few days before the trial in February, it filed a "Partial Abandonment * * *" which reduced the area taken to only 43 square feet, which was already in use, after the shortening and rounding off of the sharp point of the "V" with the highway's new paving and curbing.

Plaintiff's damages from the taking of the 126 square feet, originally selected for condemnation, was assessed at $1,500 in the Report filed by the three court-appointed commissioners. One of these commissioners, Paul Kenner, gave testimony at the trial, as a witness for defendant, to the effect that defendant's damages were more than $2,400. According to some of defendant's witnesses, the condemnation reduced the value of this property no more than some $1,500 or $2,000, while others gave testimony, parts of which tended to show that such damages were as great as $6,000. The defendant himself testified that the market value of the Dairy King premises *before* the condemnation was $10,500. Upon being asked by his counsel, during his direct examination, upon what he predicated that figure, defendant testified: "I was offered that for it." Because of this answer, plaintiff's counsel moved for a mistrial, but his motion was overruled after the court admonished the jury to disregard the witness' quoted answer. On redirect examination defendant testified that the market value of the drive-in premises, *after* the condemnation, was only $6,500. A subsequent part of his redirect examination was as follows:

"Q. * * * Where did you get this figure? A. I had it sold for that.

"Q. Made in a contract? A. Yes."

Thereupon plaintiff's counsel again moved for a mistrial and this motion was also overruled after the court had again admonished the jury not to consider defendant's testimony as to how he arrived at the figure he named.

Defense counsel states, without contradiction, that at the close of the trial, the jury viewed the premises. After its deliberations, it returned a verdict for plaintiff in the principal sum of $2,250; and judgment was entered accordingly. Upon the overruling of its motion for a new trial, plaintiff perfected the present appeal.

██ Plaintiff's argument for reversal is set forth under three propositions. The third one is: "That the verdict is contrary and in disregard to the court's instructions." The only one of the court's instructions referred to is the 11th one, by which the jury was told, in effect, that, under the law, plaintiff had the right and authority to build curbs at the edge of the paving on the "highway side" of defendant's property. This instruction bears some relation to portions of the testimony tending to show that part of the damages to the value of defendant's premises, as a site for a drive-in business, resulted from plaintiff's improvement of the highway consisting, more particularly, in reducing (by construction of the curbing on that side of it) the space for ingress and egress of highway vehicles to and from defendant's premises. The evidence tends to show that, before the highway improvement, tourists and other potential patrons of defendant's establishment could drive into and park on its off-street parking space, or driveway, at any point along its entire highway frontage of 130.42 feet, whereas, after the curb construction, this footage was reduced to two driveways totalling 80 feet in width, one of which was back of defendant's building, rather than abreast, or in front, of it, and served defendant's property and a nearby tourist court jointly. Defendant does not deny plaintiff's right, or author-

ity, to build the curbing. The unsoundness of plaintiff's arguments results from speciously assuming, or deducing that, because of such authority, it owed defendant nothing for damages resulting from its exercise. None of the authorities plaintiff cites supports the conclusion it draws from the premise referred to. Both parties herein recognize that in condemnations of this kind, the condemnee's compensable injury is not limited to the value of the tangible property actually carved out of, or taken from, his original premises; but, that it also includes consequential damages to the value of the property which remains after the taking. Finley v. Board of County Com'rs, Okl., 291 P.2d 333, involved condemnation, for U.S. Highway 77's improvement, of a strip of land across the front of Oklahoma City's Rail Fence Tourist Court. The condemnees in that case claimed, as a part of the damages to their property, the detrimental effect of the involved highway improvement upon access to said property from the highway. They contended in the appeal, that the trial court's instructions did not submit such items to the jury for consideration and assessment as part of their damages; and that said court should therefore have given particular requested instructions. This court did not uphold their argument with reference to the effect of the instructions given, but we did recognize the condemnees' right to consideration of such injuries as a part of their consequential damages. Therefore, if the jury in this case did consider the evidence on the element of "access", or ingress and egress, in arriving at the lump sum of damages named in its general verdict, it was within its proper prerogative. In this connection, notice Grand River Dam Authority v. Misenhimer, 195 Okl. 682, 161 P.2d 757, and the cases therein cited. Nor can we concur in plaintiff counsel's statement that defendant "suffered no damages" from the curbing's erection because the two openings or driveways left therein gave highway traffic "more than ample access" thereto. The record furnishes insufficient evidentiary basis for such a statement, which

concerns a matter of special injury which the jury, after viewing the premises, was in a much better position to pass upon than are we.

In Plaintiff's first proposition, it contends, in substance, that the trial judge erred in refusing to declare the mistrial plaintiff's counsel is hereinbefore shown to have twice requested. In its second proposition it contends, in substance, that defendant's recovery was excessive, appearing to have been made under the influence of passion and prejudice; and that it is not sustained by sufficient evidence, and is contrary to law.

As to plaintiff's hereinbefore described motions for mistrial based upon defense counsel's elicitation from his client of inadmissible testimony concerning an offer to purchase the property he had received before the condemnation, and a contract he apparently could have entered into to sell it after the condemnation, we may determine whether the judgment should be reversed on that account by the same standard we use in making the same determination as to alleged errors in admitting incompetent evidence, generally. The general subject of what to do to prevent prejudice from exhibiting incompetent matters to the jury is usually regarded as within the trial judge's discretion. And, judgments in accord with verdicts that are within the issues and supported by sufficient competent evidence are not ordinarily reversed for such alleged errors, where there is nothing in the record to indicate that they would have been different had the alleged errors not occurred. Hostutler v. State, Okl., 302 P.2d 983; Rosier v. Metropolitan Life Ins. Co., 197 Okl. 35, 168 P.2d 302; Mid-Continent Petroleum Corp. v. Fisher, 183 Okl. 638, 84 P.2d 22. That prejudice must appear from an examination of the record is undoubtedly the rule where the witness gives incompetent and irrelevant answers in response to proper questions. Letcher v. Skiver, 99 Okl. 269, 226 P. 1029. The mere statement of the rule, however, shows that it does not embrace a situation such as existed at the time the trial court

was requested, for the second time, to declare a mistrial, after defense counsel had, subsequent to his client's having answered a proper question with inadmissible testimony, pursued the matter further and asked an improper one. It is the latter question and defendant's answer to it that comprises the subject of most of plaintiff's argument, with the inference that the circumstances, including a previous admonition by the court, indicate that defense counsel's last above quoted question was deliberate. In Aderhold v. Bishop, 94 Okl. 203, 221 P. 752, 757, 60 A.L.R. 137, where counsel for plaintiff asked an objectionable question for the second time, this court said:

"* * * in no case that we have been able to find has a reversal resulted where it is possible to determine from the whole record that the jury could not have been prejudicially influenced."

Defendant does not directly refute plaintiff's claim that the quoted part of his redirect examination was inadmissible, but he calls attention to a portion of his cross examination wherein, after the trial judge, in ruling on plaintiff's first motion for a mistrial, had indicated from the Bench, that what defendant had paid for the property, as well as what he sold it for, was incompetent as evidence, plaintiff's counsel asked how much he had paid for it, and the defendant answered: $8100.00." One obvious effect of eliciting this information was to counter other testimony to the effect that the property, at the time of the condemnation, was worth $10,500. Defense counsel do not directly state the object of this portion of their argument, but they are not entirely correct if they assume that the conduct of plaintiff's counsel justified, excused, or rendered less objectionable, their later elicitation of inadmissible testimony. However, we have recognized that where an attorney's objectionable conduct is invited by, or retaliatory of, improper conduct on the part of opposing counsel, it must, in order to work a reversal, appear *quite plainly* that the verdict was affected thereby. In this

connection, see generally the discussion in Cosar v. Bemo, Okl., 282 P.2d 222, 226, 227. In the cited case we pointed out:

"If this were not the rule, one party's counsel would have unlimited license to prejudice the jury against his opponent's side of the case, and, if retaliatory measures were taken, keep obtaining additional trials until the verdict was satisfactory to him."

As there was other evidence besides the defendant's above quoted inadmissible answers upon which the jury might quite competently and logically have based its verdict, and plaintiff fails to show any ground, within our prerogative, for concluding that the jury based its verdict not upon that evidence, but upon the defendant's testimony that it was instructed to disregard, plaintiff has not discharged its burden of showing prejudice from the trial court's refusal to declare a mistrial. Nor does the record reveal the existence of any of the prerequisites for disturbing an allegedly excessive verdict. See Mid-Continent Petroleum Corp. v. Fisher, supra, and Cravens v. Hughes, 207 Okl. 503, 250 P.2d 877.

■ Plaintiff's counsel argue that the amount of the jury's verdict was $250 higher than justified by any evidence, except the testimony of the defendant himself and the witness, Paul Kenner. Since, as hereinbefore indicated, both of these witnesses testified to the property's having values higher than the amount of the verdict, counsel cannot show that the latter is without evidence to support it. But his argument is directed toward showing that said testimony was without probative value —the defendant's, on the ground that the figures he gave as to the value before and after the condemnation were obviously based upon improper considerations—and Kenner's, on the ground that it was self-contradictory and contrary to the Commissioner's Report he had previously signed. Counsel cites no authority showing that either of these men was wholly disqualified as a witness on account of the considerations he mentions (See Am.Jur., Vol. 20, "Evidence", sec. 897, Vol. 18, "Eminent Domain", sec. 355) and, from our examination of Kenner's testimony, we think it shows that the figures stated therein included proper elements of damages, that, as far as he knew or was advised, were, from inadvertence or other cause, not included in the $1,500 specified in the Commissioner's Report. In view of the jury's opportunity not only to observe this witness and his demeanor, but also to view the premises and see the actual situation with reference to the condemnation in question, we think it was in a much better position to determine whether or not the apparent, or superficial, difference between the Commissioner's Report and his testimony had the effect of impeaching him as a witness, and of determining the weight and probative value his testimony should be accorded. (In this connection, notice Am.Jur., Vol. 18, "Eminent Domain", sec. 361). We think his testimony was neither unreasonable or inherently improbable. Nor do the figures he testified to appear to be exaggerated when compared with those given by the witnesses generally, and with the sole exception of the one witness summoned by plaintiff on the subject of values. In view of the foregoing, we cannot say that the verdict and judgment lack sufficient support in the evidence, or are contrary to law or to the court's instructions. Nor, under the rules hereinbefore referred to, were the alleged errors committed in the trial court prejudicial. Said court's judgment is therefore affirmed.

DAVISON, C. J., WILLIAMS, V. C. J., and HALLEY, JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.