SUNTIDE INN OPERATING CORPORATION, Appellant,

v.

STATE of Oklahoma ex rel. OKLAHOMA STATE HIGHWAY COMMISSION, Appellee.

No. 49074.

Supreme Court of Oklahoma.

Nov. 1, 1977.

Rehearing Denied Dec. 21, 1977.

Arnold D. Fagin, Fagin, Hewett, Mathews & Fagin, Oklahoma City, for appellant.

Spencer W. Lynn, Oklahoma City, for appellee.

IRWIN, Justice.

Suntide Inn Operating Corporation (appellant) commenced proceedings to recover damages allegedly sustained when the Oklahoma State Highway Commission (State) caused to be constructed a limited access highway on a right-of-way adjacent to appellant's motel and restaurant proper-ty. Trial was had to a jury. The jury returned a verdict in favor of State (denying appellant any recovery) and judgment was rendered accordingly. Appellant appealed. The material facts are not in dispute.

Prior to the construction of the limited access highway, appellant's property abutted a service road which paralleled "N.W. 39th Expressway". Appellant had direct access to and from the expressway via the service road. As a part of its interstate highway construction program, State built an on-off ramp interchange connecting Interstate-240 and the expressway. The expressway was converted into a limited access highway and appellant's property is located in the southeast quadrant where I–240 and the limited access highway inter-sect. All of the construction was on previously acquired right-of-way and there was no physical taking of appellant's property. As a consequence of the new construction, appellant no longer has direct access to and from the expressway via the service road but a more circuitous route must be used.

Appellant sought damages on the theory that by converting the N.W. 39th Expressway into a limited access highway, State had deprived it of reasonable access to its property.

The record conclusively shows that appellant does not now have the direct access to the limited access highway that it did have to the N.W. 39th Expressway prior to the construction. However, since the sufficiency of the trial court's instructions is the only issue presented on appeal it is unnecessary to enlarge on the facts.

Appellant contends that two instructions[1] were erroneous and constitute reversible error. Appellant argues the two instructions explained in great length what

---

1. The alleged erroneous instructions are:
   Instruction No. 2
   Instruction No. 3
   INSTRUCTION No. 2, BURDEN OF PROOF.
   In a civil lawsuit, such as this one, there are requirements as to which party is to prove to you certain things. This is called "burden of proof".
   When I say that a party has the burden of proof on any proposition, or use the express "if you find", or "if you decide", I mean you must be persuaded, considering all the evidence in the case, that the proposition on which such party has the burden of proof is more probably true than not true.
   The Plaintiff has the burden of proving that the highway improvement project is an arbitrary, capricious or unreasonable exercise of the State's police powers insofar as its rights of ingress and egress are concerned.
   If you find by a preponderance of the evidence that the Plaintiff has proven that the

State could lawfully do in the reasonable exercise of its police power but made only token reference to and practically ignored an explanation of what State could not lawfully do. Appellant argues the Court "failed to explain what constitutes an unreasonable exercise of the police power. That failure left the jury without the central factual issue in the case, i. e., whether or not State deprived appellant of reasonable access to its property." Appellant states in its brief that "it does not contend the Court per se incorrectly stated the law in its instructions" but the trial court failed to fairly present the law.

The question of compensation for loss or limitation of access rights to property has taken on new importance with the development of limited access highways. In 42 A.L.R.3d "Access to Highway-Compensation Limitations" 13, it states that the right of access belonging to the landowner whose property abuts upon a street or highway may not be taken by government authorities without payment of just compensation, but such right of access may be regulated for the public safety or welfare, and such regulation is not compensable. The problem therefore is to determine whether the right of access has been merely regulated for the public safety or welfare by the exercise of the police power, or whether the regulation amounts to a compensable taking.

The Supreme Court of New Mexico in considering a condemnation proceeding in-

highway improvement project creating Interstate Highway 240 is an arbitrary, capricious or unreasonable exercise of the State's police powers, then your verdict will be in favor of the Plaintiff.

On the other hand, if you do not so find, or if the Plaintiff has failed to sustain its burden of proof as to this issue, then your verdict shall be in favor of the Defendant.

By a "preponderance of evidence" as the term is used in these instructions, is not necessarily meant the greater number of witnesses testifying to a fact or state of facts, but means that evidence which to your minds is most convincing and seems more probably true than not true.

INSTRUCTION No. 3, ISSUES AND LAW IN THE CASE.

The Plaintiff in this case does not contend that the Defendant State of Oklahoma ex rel. Department of Highways has taken any land belonging to the Plaintiff. The Plaintiff still owns all its land just as it did before the construction of IH–240 began.

You are instructed that the Defendant did have a right to construct IH–240 where old U.S. 66 Highway had been in the form of a limited access interstate highway as the statutes of this State provide.

"Each governing body shall have authority to designate and establish limited access facilities as new and additional highways, or may designate any existing street or highway as a limited access facility. The governing body shall have authority to provide for the elimination of intersections at grade of limited access facilities with any highway, road, street, or alley now or hereafter existing, either by grade separation, or by closing off such other highway, road, street or alley, or by otherwise protecting such limited access facilities."

You are further instructed that the law of this State provides that the limitation and regulation of street or highway traffic are a proper exercise of the police power of the State in the regulation of traffic and the State may do many things which may in fact cause damages to an abutting property owner but which, under the law, do not give such property owner any legal right to recover damages. Included in the proper exercise of the police power of the State in regulation of traffic are such matters as the re-routing or diversion of traffic, the use of suitable traffic control devices, prescribing one-way traffic, prohibiting particular types of turns at specified places and restricting the speed, weight, size and character of vehicles allowed on certain highways. Furthermore, a State may, in the lawful exercise of police power, regulate the right of ingress or egress to a street or highway without incurring any liability to pay compensation to property owners affected as long as there is no unreasonable or absolute denial of ingress or egress to the street or highway.

In this case, there has not been an absolute denial of ingress or egress to Plaintiff's property, and the Plaintiff has alleged that the exercise of the State's police power was unreasonable, arbitrary or capricious in the manner in which the constructions of IH–240 was performed, and that the Plaintiff was injured thereby through such alleged unreasonable or capricious exercise of the State's police power to regulate and accommodate the movement of traffic.

The issue for you to first determine is whether or not the action of the State was arbitrary, capricious and/or unreasonably impaired the ingress or egress to the Plaintiff's property.

volving its interstate highway system in *State ex rel. State Highway Commission v. Danfelser*, 72 N.M. 361, 384 P.2d 241 (1963) said that the right of access is merely a right to reasonable, but not unlimited, access to and from land. And for clarity, the court said, " . . . we would define the right of access as a right of ingress to and egress from land on an abutting street or highway and therefrom to the system of public roads, subject to reasonable traffic regulations and not affected by diversion of traffic or reasonable circuity of travel."

In *Brock v. State Highway Commission*, 195 Kan. 361, 404 P.2d 934 (1965), the Court said:

"We adhere to the rule that the owners of abutting lands have a right of access to the public road system but it does not follow that they have a right of direct ingress and egress to and from a controlled access thoroughfare. The right of access, if it can be determined to be a right under such circumstances, is the right to reasonable, but not unlimited, access to and from the abutting lands.

Although an abutting landowner has a right to use a highway he cannot be heard to say that he has been deprived of his right or compensably damaged because he does not have direct access to a certain highway where public judgment dictates that access to and from the highway should be controlled and is subject to control under the police power of the state."

\*    \*    \*    \*    \*    \*

Circuity of travel, necessarily and newly created, to and from real property, does not of itself result in legal impairment of the right of ingress and egress to and from such property and a controlled access highway.

The common complaint is made here that following reconstructions, the bulk of traffic traveled on the main highway with no direct access to claimants' property from the thoroughfare. As for diversion of traffic, an abutting owner has no right to the continuation of a flow of traffic in front of his property. The

state's exercise of its police power in such situations is predominant and controlling. The owner of abutting land has no property right in the traveling public using the highway. The state may abandon or reroute an existing highway without any liability to the owners of abutting lands."

Although *Gibbons v. Missouri, K. & T. R. Co.*, 142 Okl. 146, 285 P. 1040 (1930), involved the validity of an order of the Oklahoma Corporation Commission, language used in that decision is pertinent here. We said:

"acts done in the proper exercise of the police power, which merely impair the use of property, do not constitute a taking within the meaning of the constitutional requirements as to the making of compensation for the taking of property for public use, and accordingly do not entitle the owner of such property to compensation from the state or its agents, or give him any right of action for the injuries sustained. In other words, regulations which the state, in the exercise of its police power, authorizes with respect to the use of property are entirely independent of any question of compensation for such use. The question of compensation has no influence in establishing them. The exercise of the police power, therefore, differs from the exercise of the right of eminent domain, which involves the appropriation of private property to public use, and requires in the lawful exercise, pecuniary compensation for the loss inflicted on the owner."

\*    \*    \*    \*    \*    \*

It is well settled that the state, or its agents, in the exercise of its police power can extend this power only to such measures as are reasonable under all circumstances. The means adopted must bear some real or substantial relation or be reasonably necessary for the accomplishment of a legitimate object falling within the scope of the police power, and the law or regulation must tend toward the preservation of public welfare, health, safety, or morals."

In *Brewer v. City of Norman*, Okl., 527 P.2d 1134 (1976), we quoted with approval the following language from 29A C.J.S. Eminent Domain § 14, pg. 202:

"The limitation and regulation of street or highway traffic are referable to the police power, and not to the power of eminent domain. Accordingly, in the proper exercise of its police power in the regulation of traffic, a state or municipality may do many things which are not compensable to an abutting property owner, such as the re-routing or diversion of traffic, the use of suitable traffic control devices, prescribing one-way traffic, prohibiting particular types of turns at specified places, and restricting the speed, weight, size and character of vehicles allowed on certain highways. Furthermore, a state or municipality may, in the lawful exercise of the police power, regulate the right of ingress or egress to a street or highway without compensation, as long as there is no unreasonable or absolute denial of ingress, or egress to the street or highway."

Except for minor language change the above statement is almost identical with the third grammatical paragraph of the Court's instruction No. 3. We also note that the second paragraph of the same instruction is almost identical to 69 O.S.1971, sec. 1302.

In *Davis v. National Pioneer Insurance Company*, Okl.App., 515 P.2d 580 (1973), the Court, in considering a complaint of undue emphasis in an instruction said:

" . . . particular wording or repetition must be left to the discretion of the trial court and we should not reverse unless there is obvious prejudice to one party because of over emphasis on the case of the other shown by the instruction viewed as a whole."

In *Gasko v. Gray*, Okl., 507 P.2d 1231 (1973) we said instructions must be viewed in light of the evidence upon which they operate and of the instructions as a whole. When thus considered, if it does not appear probably that the rights of the complaining party were prejudiced by alleged error in instructions, a verdict against said party will not be set aside on account thereof.

The trial court sustained appellants "Motion for View by Jury". The instructions did not place upon appellant an undue burden, did not misstate the applicable law and were not misleading. We have examined all the instructions and it does not appear that appellants rights were prejudiced by the instructions.

Judgment Affirmed.

HODGES, C. J., and WILLIAMS, BARNES and DOOLIN, JJ., concur.

LAVENDER, V. C. J., and DAVISON, BERRY and SIMMS, JJ., dissent.

DAVISON, Justice, dissenting:

I respectfully dissent from the majority opinion of my fellow Justices. In reaching the results that it did, the majority opinion puts great emphasis upon the fact that a private citizen may not be compensated for damage to his property right of access unless there is a taking. The majority opinion also suggests that when a governmental authority regulates a private citizen's right to access for the public's safety and welfare, such regulation is not compensable. In discussing these concepts, the majority opinion states:

" * * * the right of access belonging to the landowner whose property abuts upon a street or highway may not be taken by government authorities without payment of just compensation, but such right of access may be regulated for the public safety or welfare, and such regulation is not compensable. The problem therefore is to determine whether the right of access has been merely regulated for the public safety or welfare by the exercise of the police power, or whether the regulation amounts to a compensable taking."

Thus, under the law created in the majority opinion, private citizens may be required to suffer significant property damage at the hands of the government and not be compensated for that damage. Such should not be the law, and such is not the law. In

emphasizing the government's right to regulate, and not compensate unless a taking is present, the majority opinion ignores the fact that private property rights of the appellant were *damaged for the benefit of the general public*, and that the Constitution of the State of Oklahoma requires that a private citizen be compensated for *damage* to his private property. Article II, Section 24 of the Oklahoma Constitution provides in part:

"Private property shall not be taken *or damaged for public use* without just compensation * * *."

[Emphasis added]

I respectfully suggest that appellant's property may have been damaged in order to benefit the general public, and that the above Constitutional provision requires compensation. The instructions given to the jury emphasized the right of the State to build and maintain roads, if done in a reasonable, noncapricious and nonarbitrary manner and virtually ignored a citizen's right to be compensated for *damage* to his private property. Such lack of proper instruction was clearly prejudicial and, for that reason, I would reverse the jury's verdict and remand the case for a new trial.

An examination of the record in this case clearly demonstrates that there was a *distinct possibility* that appellant motel owner's property right of "reasonable access" was *substantially damaged*—the jury should have been instructed that the occurrence of such substantial damage gives rise to compensation. In support of this contention, I respectfully offer the following examination of the concept of "right of access" as "property", as reflected by the law of Oklahoma.

In *City of Shawnee v. Robbins Bros. Tire Co.*, 134 Okl. 142, 272 P. 457 (1928), this Court stated in its first syllabus:

"The *right of access* to property abutting upon public highway is appurtenant to the lot, and *is private property*, and passes to the lessee of the property while he is in the lawful possession, and while subject to reasonable regulation, cannot ordinarily be denied, and of which the owner or lessee *may not be deprived, without just compensation.*"

[Emphasis added]

In the *Oklahoma Turnpike Authority v. Chandler*, Okl., 316 P.2d 828 (1957), this Court held that:

"* * * (1) a property owner had the right to adequate access to his property from either end of a street, and destruction of such right results in an injury not merely in degree, but different in kind from that suffered by the general public; (2) where there was evidence the landowner suffered more than mere inconvenience, it was for the jury to decide whether the right of ingress and egress had been impaired, even though the means of access had not been destroyed entirely. . . . "

Similarly, in *State ex rel. Department of Highways v. Bowles*, Okl., 472 P.2d 896 (1970), we held that the taking or *damaging* of free or convenient access to landowner's property, is a compensable injury.

The case law cited above, clearly demonstrates that this State recognizes the right of reasonable access to private property *as a private property right.*

At trial and in the briefs, great emphasis was put upon the fact that not one inch of appellant's property had been *physically* taken or invaded. The question implicitly raised by such emphasis is:

Whether the property right of reasonable access can be violated, necessitating compensation, if no portion of the landowner's property has been physically taken or invaded?

Even a casual examination of this State's case law indicates that a physical invasion or a physical taking is not necessary in order to constitute a violation of a landowner's right to reasonable access in such a manner as to require compensation.

In *Foster Lumber Co. v. Arkansas Valley & W. Ry. Co.*, 20 Okl. 583, 95 P. 224 (1908), this Court stated:

"* * * Plaintiff has, by virtue of its ownership of said lots, an interest in Street A on which said lots abut, and a

right therein common with the public to pass over the same as a public highway. In addition thereto, it has a special right in said street not common to the public, to wit, the right of ingress and egress over the same to and from its lots. The decisions of the courts made under statute or constitutional provision to the effect that the complaining party can recover only where there is a 'taking of private property for public use' are nearly uniform on the question that, where the injury complained of by the abutting property owner is one that is common to the general public, such injury is damnum absque injuria. The decisions of the courts, however, are by no means uniform upon what constitutes a 'taking' of property in cases similar to the one at bar, but we believe the weight of the better authorities, if not the greater in number, is that such *a 'taking' may result without conversion of the property or any part thereof, as under statutes and constitutional provisions which provide that private property shall not be taken for public use without compensation. . . .*" (Emphasis added).

Citing prior authority, this Court took the same position in *Chicago, R.I. & P. Ry. Co. v. Prigmore,* 180 Okl. 124, 68 P.2d 90 (1937). In that case, we stated:

" * * * Under section 24, article 2, Okl.Const., providing that 'Private property shall not be taken or damaged for public use without just compensation,' a recovery is authorized *although there is no physical invasion of the property damaged. Chicago, R.I. P. Ry. Co. v. Larwood* (1935) 175 Okl. 96, 51 P.(2d) 508; *Chicago, R.I. & P. Ry. Co. v. Jennings* (1936) 175 Okl. 524, 53 P.(2d) 691. . . ."

(Emphasis added).

Also see *Grand River Dam Authority v. Misenhimer,* 195 Okl. 682, 161 P.2d 757 (1945).

Having seen that a physical taking or invasion is not necessary for a taking or damage to occur, I will next consider whether such taking or damage can occur

when a landowner's right of ingress and egress is limited, but not entirely cut off. In *Oklahoma Turnpike Authority v. Chandler,* supra, this Court held that a landowner may recover for a *material infringement on his right to ingress and egress,* even though the landowner still had access to the highway abutting his property through a more inconvenient route. In so holding, we stated:

" ' * * * If the highway upon which his property abuts is so closed that said property is placed in a pocket or cul-de-sac, he suffers a special injury and may recover damages even though he has access thereto by a more inconvenient circuitous route. We think this expressed the better view as well as the rule to which we are committed in this jurisdiction.' "
(*Oklahoma Turnpike Authority,* supra, 316 P.2d at p. 832 citing *Grand River Dam Authority,* supra).

In *Chicago, R.I. & P. Ry. Co. v. Hughes,* 180 Okl. 604, 71 P.2d 693 (1937), we held that an owner of property abutting a public street closed by construction of a viaduct under a railroad track was entitled to damages for violation of his right of ingress and egress, even though an alternate route had been provided. The alternate access which was provided was set between the concrete embankments used in the viaduct and adjacent property so that vehicles coming from the closed street onto an avenue were forced to turn sharply to the left, and after getting to the end of the embankment, those wishing to proceed north were compelled to turn sharply to the right into the viaduct.

A similar holding was reached in *Chicago, R.I. & P. Ry. Co. v. Jennings,* 175 Okl. 524, 53 P.2d 691 (1936), under the same basic set of facts.

Although language in *Brewer v. City of Norman,* Okl., 527 P.2d 1134 (1974), suggests that compensation is only available and appropriate when complete denial of egress or ingress exists, such is not the law in Oklahoma. The language we refer to reads as follows:

"On the basis of the foregoing, we hold that plaintiff's evidence, without anything therein to indicate that the Flood Street changes effected an absolute denial of ingress or egress between said street and his property, * * *, was insufficient to establish a cause of action for the damages he claimed. . . . "

The court's meaning, although we believe clear in the context of our full discussion, is not easily discerned by looking at the above language *out of context*. The intent of the statement was to state that landowners are only entitled to compensation when they are denied *reasonable* access.

In short, the reasoning in the *Brewer* case was that plaintiff Brewer, after the modification of Flood Street, still had reasonably adequate access to the street.

In the case now before us and in the *Brewer* case, the causes of action were in part predicated upon the theory that an abuse of police power caused or contributed to the loss of access.

In *State v. Burden*, Okl., 338 P.2d 154 (1959), *we held that the fact that the State might have had a legitimate right to construct a curbing along condemned land did not bar the condemnee's right to damages resulting from the interference with the landowner's right of ingress and egress*, caused by the construction of the curbing. Using the same rationale, I would hold that the fact that the State did not act arbitrarily or capriciously in constructing the limited access highway does not bar a citizen's right to be compensated for the loss of a substantial part of his access to and from his property.

In reaching our decision in *Brewer v. City of Norman*, supra, we briefly discussed the existence of a *dichotomy between the exercise of police power* and the *exercise of eminent domain*. The rationale accompanying such a dichotomy is that a governmental entity, when exercising its police power, can only be held liable, regardless of the damage it causes, if its exercise of police power is unreasonable, capricious or arbitrary. Although, the use of either the eminent domain approach or the police power

approach can reach the same result, with courts finding a denial of reasonable access to be an unreasonable exercise of police power, I find that such an analysis is confusing and obfuscates the principal issue in cases dealing with the loss of access. The controlling issue for the finder of fact in such a case is: *Did governmental action cause a substantial loss of access to the main system of roads?* If the finder of fact answers this question affirmatively, liability attaches, and the landowner is entitled to compensation.

A clear understanding of the logical analysis underlining the *substantial loss rationale* is essential to its proper application. The underlying analysis contains four steps:

*First*, the "property right of access" should be defined. This property right to access, as demonstrated by the case law discussed above, is not a right to unlimited access, but is a *right to reasonable access*.

I would thus define the "property right to access" as: The reasonable ability of a landowner to reach the abutting public ways by customary means of locomotion and then to reach the general system of public ways in a reasonable manner.

*Second*, the finder of fact must determine if any governmental activity has affected one's property right to access.

*Third*, the finder of fact must determine whether the property right of access involved has been "damaged"—that is, whether there *has been a substantial or unreasonable loss of the right to access*.

*Fourth*, if it is determined that a substantial or unreasonable loss of the right to access has occurred, the finder of fact must then assess the damages caused by such loss.

The measure of damages in such instances is the difference between the market value of the property before and after the loss. In awarding damages, the finder of fact may consider any change in the highest and best use which may have occurred as a result of the loss. For this limited purpose, the court may in its discretion receive with

caution evidence of lost patronage. See *State ex rel. Department of Highways v. Bowles*, Okl., 472 P.2d 896 (1970). However, no damage as such may be asserted for diversion of traffic or for loss of customers, business, good will, income, or profits, the latter depends not only on the location of access, but on many complex intangible variables. See *Oldfield v. City of Tulsa*, 170 Okl. 329, 41 P.2d 71 (1935), and *State ex rel. Department of Highways v. Bowles*, supra. Thus, only the diminution in value of the real estate and improvements thereon is relevant.

The evidence in this case clearly demonstrated that appellant motel corporation's right to access had been damaged. The jury should have been given the opportunity to determine whether appellant's right to access had been *substantially damaged.*

At trial, the evidence showed that appellant corporation owned the Suntide Motel and Restaurant, and the surrounding property, presently located at the intersection of Highway 66 (which runs east and west) and Interstate Highway 240 (formerly Grand Boulevard, which runs north and south). When appellant motel corporation acquired the property in question, its north boundary line abutted directly upon the service road south of old Highway 66. This service road was also known as N.W. 39th Street.

From 1957 at the completion of the construction of old Highway 66 until the construction of the limited access highway, the principal means of ingress and egress to and from the motel property was an exit on old Highway 66, which exited directly onto the service road in front of appellant's motel at the place directly in front of the motel property. This exit allowed those seeking access to the motel from Highway 66 to exit the highway and drive straight across the service road onto appellant's property. Access to the highway from the motel could be achieved by driving directly from the motel property across the service road and onto the highway, using the "exit." The exit afforded access to and from the motel to those traveling in either direction on old Highway 66. Additionally,

until the time of the construction of the limited access highway, the service road in front of the motel property was a two-way street.

After the construction of the limited access highway, a portion of the service road on which the motel was located, was designated a one-way street going east, and access to and from the motel from the highway became more difficult than in the past.

Now, eastbound travelers on the limited access highway, using the less circuitous means possible, must, in order to obtain access to appellant's property, exit onto the southeast service road several blocks east of appellant's property, on the same side of the highway, but must then by virtue of the construction of the exit and the one-way service road, proceed east for approximately another half mile to May Avenue, turn north (left) onto May Avenue, crossing May Avenue, turn back west (left) onto the northeast service road, proceed west on the northeast service road to Drexel Avenue, turn south (left) under the highway to a point on the southeast service road west of where he exited in the first place, then turn west (right) and travel down the two-way part of the southeast service road to appellant's property.

Westbound travelers seeking the less circuitous route to appellant's property must exit at May Avenue on the north side of the limited access highway more than a mile before reaching the property, cross May Avenue and proceed west on the northeast service road to Drexel Avenue, turn south (left) under the highway and finally turn west on the two-way portion of the southeast service road. These means of access are further limited by the fact that between the hours of 4:00 and 6:00 P.M., left turns at the intersection of May Avenue and the northeast service road are prohibited by City ordinance.

Additionally, direct access from May Avenue was also limited after construction, as the one-way portion of the southeast service road makes it impossible for drivers to turn left and proceed west to appellant's motel using the southeast service road.

There are other means of access to and from appellant's motel, but they are just as or more circuitous.

I respectfully suggest that, as shown above, the law in Oklahoma is as follows:

1. The State or a subdivision thereof may not *damage* private property for public use without making just compensation for the property damaged.

2. A citizen's right to *reasonable access* to his land is recognized in Oklahoma as a "property right," constituting property.

3. Citizens are entitled to be compensated when the State or a subdivision thereof substantially damages their right of reasonable access to their land, regardless of the reasonableness of the State's action.

In a nutshell, the above stated principles of law may be expressed as follows:

When the action of the State or one of its subdivisions, causes substantial damage to a citizen's property right of reasonable access to his property, the citizen is entitled to just compensation.

This is the law in Oklahoma, and should remain the law, for it requires those benefiting from such damage to bear the burden, rather than requiring individuals to bear the burden of the damage for the benefit of their fellow citizens. Under the facts presented in the case, the jury could easily have found that appellant's property right to reasonable access had been substantially damaged. The jury was not *properly* instructed that such substantial damage would give rise to liability. The law requires such instruction—it should have been given, but was not.

In examining the instructions given by the trial court, we first note that the jury was instructed to consider the instructions *as a whole*, and not a part to the exclusion of the rest.

In *Lewallen v. Cardwell*, Okl., 325 P.2d 1074 (1958), we held that when a trial court instructs the jury, that they "must consider the instructions as a whole and not a part to the exclusion of the rest", we will assume that the jury, in accordance with the instruction, viewed the instructions as a whole.

In viewing the instructions as a whole, we find that they overemphasized the State's police powers.

The instructions also emphasized, "in laundry list fashion", what the State may do in exercising its police power.

Only two brief phrases in the court's instructions focused on the impairment of the right of egress and ingress. In the final two lines of paragraph three of Instruction No. 3, the court, after setting forth the State's right to regulate egress or ingress to streets, added the following restriction:

"* * * as long as there is no unreasonable or absolute denial of ingress or egress to the street or highway."

Secondly, the court, in summing up the first issue before the jury, in the last paragraph of Instruction No. 3, stated:

"The issue for you to first determine is whether or not the action of the State was arbitrary, capricious and/or unreasonably impaired ingress or egress to the Plaintiff's property."

These brief references to the main issue at hand, coupled with the fact that (1) the majority of the instructions emphasized the police power, and that (2) the court did not define "unreasonable impairment", compels me to conclude that the instructions *as a whole* did not provide the jury with adequate guidelines with which to decide the central issue in the case.

I am of the opinion that because of the inadequacy of the instructions, which were clearly prejudicial to the plaintiff below, the verdict of the trial court should be reversed and the case remanded for new trial.

I am authorized to state that Vice Chief Justice LAVENDER concurs in the views herein expressed.